Davis *v.* Townsend.

Same Term. *Before the same Justices.*

Davis *vs.* Townsend.

A license is technically an authority given to do some one act, or a series of acts, on the land of another, without passing any estate in the land: such as a license to hunt on another's land, or to cut down a certain number of trees. These are held to be revocable, when executory, unless a definite term is fixed; but irrevocable, when executed.

But licenses, which in their nature amount to the granting of an estate, for ever so short a time, are not good without deed; and are considered as leases, and must always be pleaded as such.

Licenses to do a particular act, do not, in any degree trench upon the policy

Davis *v.* Townsend.

of the law which requires that bargains respecting the title or interest in real estate, shall be by deed or in writing. They amount to nothing more than an excuse for the act, which would otherwise be a trespass.

But a permanent right to hold another's land for a particular purpose, and to enter upon it at all times without his consent, is an important interest, which ought not to pass without writing, and is the very object provided for by the statute of frauds.

It is a rule to which the courts have constantly adhered, that an actual location of a division line, between the adjoining lands of different proprietors, however erroneous, shall control the courses and distances in the title deeds, when acquiesced in for a length of time sufficient to bar an entry.

Agreements made in respect to disputed boundary lines, are not within the statute of frauds, because they can not be considered as extending to the title; nor do they have the operation of a conveyance, so as to pass the title from one to another.

Such agreements proceed upon the fact that the true line of separation is not only fairly and truly in dispute, but that it is also, to some extent, undefined and unknown.

To bring an agreement in respect to lands within the operation of the statute of frauds, it must in effect create, grant, assign, surrender or declare some interest or estate in lands, other than a lease for the term of one year; and whenever it is designed to have this effect, it must be in writing, and be subscribed by the party granting or creating such estate or interest; or it is absolutely void.

The law, for wise and just purposes, prescribes certain forms and solemnities to be observed in passing an interest or estate in lands; and pays no regard whatever to the motives of those who may become parties to the conveyance, nor to the extent of territory to be affected thereby. These forms and solemnities must be observed, or the legal estate will remain precisely as if nothing had been done.

Equity will enforce the performance of a parol agreement for the sale of lands, against a vendee who has been put into possession, or against a vendor who has been paid the purchase money. And, *it seems*, that the supreme court, in the exercise of its *equitable power*, might enforce and maintain a parol contract to straighten a crooked boundary line, by an exchange of the lands necessary to effect that object, where the parties mutually obtained an equivalent for the lands surrendered, and the contract had been executed by the delivery of the possession. McCoun, J. dissented.

The owner of land, who has claimed, occupied and cultivated it up to a crooked boundary line, for a length of time sufficient to bar an entry, can not be divested of his title and estate in any portion of that land, by any parol admissions that such line is erroneous; nor, by any parol agreement to straighten it.

And any such parol agreement, made with the owner of the adjacent land, to straighten the line by the removal of the old crooked fence therefrom, and

Davis *v.* Townsend.

the erection of a new and straight fence in its stead, may be revoked at any time before such new fence shall be completed; and if such adjacent owner persist in erecting such new fence, after having notice to desist, he will be liable to an action of trespass; and can not sustain a plea of *liberum tenementum*, by any parol admissions, or other parol evidence that the true boundary line was always understood to be a straight one. McCoun, J. dissented.

THIS was an appeal to the general term of the court, by the plaintiff Joel Davis, from a judgment entered on the 29th day of May, 1850, in favor of the defendant, Isaac U. Townsend, on a verdict rendered at the circuit. The complaint alledged that the defendant broke and entered a certain close of the plaintiff's, situate in the town of North Hempstead, in &c., and with his servants then and there trod down the grass, &c.; "and also then and there *pulled and took down a fence standing upon said close, and removed the same, and also then and there erected another fence upon the said close;* and also then and there disturbed the said plaintiff in the use and occupation of the said close, and hindered and prevented him from enjoying the same as he otherwise would have done," &c. The defendant, in his answer, denied that he was guilty of the several acts alledged, &c. and " all and each of the allegations in said complaint contained." He also denied that the close or piece of land in the complaint mentioned was the close, soil, or freehold of the plaintiff; but on the contrary, he averred, that the said close or piece of land was at the time in said complaint mentioned, and is, the close, soil and freehold of the defendant. And he further alledged that the fence mentioned in the complaint was a division fence between land of the plaintiff and of the defendant, one half of which the defendant was bound to make and keep in repair, and that he " did take up and remove the part of said fence which he was bound to keep in repair, and *replaced* the same *with a new fence upon said division line, as he had full right to do.*" · The plaintiff, in his reply, averred that the defendant was guilty of the several acts &c., and that the close " was and still is the close, soil and freehold of him the said plaintiff, and was not at the time in the said complaint mentioned, nor is it the close, soil

and freehold of him the said defendant, as alledged or pretended in said answer." And " that the said new fence mentioned in said answer was not erected or placed by the said defendant upon the true division line between the said defendant and said plaintiff ; nor upon the line of the old fence, but upon the close, soil and freehold of him the said plaintiff, without any right or authority in him the said defendant so to do." And he denied the right of the defendant to take up and remove the said fence, and erect and place the new fence, as claimed and alledged in the answer. The cause was tried at the circuit in Queens county, on the 21st of March, 1850, before Justice McCoun and a jury. The plaintiff proved that his farm was separated from that of the defendant by a line fence ; that he had occupied his farm for 20 or 30, and according to one witness 38 years.; and for the whole period of 20 to 30 years had claimed and used all the land close up to said division fence, for farming purposes. It was here admitted that the parties were the owners of adjoining farms, and that the fence in question was the division or line fence between them. And from the evidence it appeared that the plaintiff's farm was on the north, and the defendant's on the south side of the division line ; that the old fence was not straight, and that the new one was on a straight line ; that the defendant kept up and maintained the east part of the original division fence, and the plaintiff the west part ; that the part of the fence the defendant removed was about the centre of the part he was bound to keep up and repair ; that the plaintiff had built about half of the old division fence, and *that* half was a straight post and rail fence, and that the defendant's half was an old worm fence. One of the plaintiff's witnesses testified that when the defendant was building his new fence, the plaintiff being disabled and confined to the house, sent him, the witness, to see how and where the defendant was putting up this new fence ; that he (the witness) told the defendant, then, that he was over the old line and upon the plaintiff's land some eighteen inches ; that the defendant replied, that when he found he was wrong he would remove the fence ; this was in May, 1849 ; and that since the erection of the new fence the plaintiff had been deprived of

Davis *v.* Townsend.

the use of the farm where the old fence stood. Another of the plaintiff's witnesses (William Skidmore) proved, that his (witness') father and the plaintiff bought the farms together, it was originally one farm; and his father occupied the defendant's farm for twelve years subsequent to the year 1811; that the two farms were divided by a division fence, and the easterly part, which the defendant kept up, was a worm fence; that his father and his workmen put up the original fence; the true line between the parties was always considered a straight line from the east to the west end. The same witness also testified that about six years before, he was called by the plaintiff to look at this fence; that Warren Mitchell was with him; that the plaintiff said that the defendant had begun to make a new fence, and as he thought, had encroached on his land; about 20 or 30 lengths were put up at that time; that Mitchell and himself were requested by the parties, who were both present and agreed upon the starting point, to fix upon the line of that fence; the defendant agreed to alter the east post and some few lengths of the fence; he was to move the east post on his own land some 12 to 18 inches; that he was to remove all that the plaintiff thought stood on his land; the true line was understood to be a straight line by all, and witness and Mitchell set the stakes in a straight line, without regard to the curve of the worm fence; the worm fence was not a straight line exactly: that they then set up stakes on nearly two-thirds of the defendant's fence; the plaintiff made no objection to the straight line; that witness saw the plaintiff in May or June, 1849, when he again complained of the defendant's putting up a fence on his land; the plaintiff did not complain of the adjustment made by witness and Mitchell, but said the defendant was building his fence on him; the fence, at the time last spoken of, was not built as far as they had previously set the stakes, but the fence, as far as built, was on an exact line with the other fence previously built by compass: the old fence curved somewhat, but the new fence was on a straight line the whole length from the east end to the western terminus on the meadows; the line of fence strikes on the plaintiff's side; the defendant authorized the witness to propose to the plaintiff to

Davis v. Townsend.

leave the matter to arbitrators to determine the true line; but the plaintiff would not arbitrate, unless the defendant would put up this fence on the centre of the old one. It was always understood in the time of witness' father, that the division line between the farms was a straight line. Warren Mitchell, being called as a witness by the defendant, corroborated entirely the statement of the last witness as to being employed by the parties, six or seven years before, to arrange the line of the division fence in their presence, and the agreement of the parties as to the running of the line, &c. Several other witnesses testified to the like effect in relation to the fences, and the agreement of the plaintiff that the fence should be made on a line that should be straight. The defendant also proved by the three persons who worked for him in erecting the new fence, that it was built on the line where the stakes were set, as described by the witnesses who set them; and that they took up the stakes as fast as they built the fence.

After the plaintiff had rested, the defendant, by his counsel, before entering on his defense, moved for a nonsuit, on the ground that the plaintiff having declared for trespasses generally, without naming the close, and the defendant having pleaded that the *locus in quo* was his own soil or freehold, and it clearly appearing that the defendant, at the time, had land in the same town, he was entitled of course to a verdict; which motion was overruled, and the defendant excepted. The counsel for the plaintiff also objected, in due season, to the offering of any evidence by the defendant, tending to show that a new division fence had been agreed upon, verbally, between the parties; and exceptions were taken in due time, on behalf of the plaintiff, to the admission of all such evidence.

The judge charged the jury, to the effect, that this was not a controversy about the title, but about the division fence; that the whole premises was originally one farm, and was divided about the year 1811, and the parties claimed title from the same source; that the line was originally intended to be straight, and the deeds called for a straight line; that the fence was built probably about 1811, the plaintiff's fence being a post and rail,

Davis *v.* Townsend.

and the defendant's a worm fence; that some six or seven years ago the defendant desired to substitute a post and rail for the old worm fence, and commenced building it, and it clearly appeared that the new fence did run on a line north of the centre of the old worm fence; that an old fence becomes a landmark, and would, if parties acquiesce for a length of time, determine the line, even though it should not accord with the true line; but if the owners desire to change the line by making it straight when it was crooked, they could do so without a deed in writing; that the title would not pass by a verbal agreement, but if the parties verbally agreed to straighten the line, the party who acted upon such agreement would not be liable to the other in an action of this kind; in such a case his entry upon the land would not be unauthorized. That the statute of frauds did not apply to this case. Here it appeared that when the defendant commenced rebuilding his fence, some six or seven years ago, he misplaced it, the plaintiff complained, and the parties called in two of their neighbors, Mitchell and Skidmore, to run the line for them; the plaintiff and the defendant agreed upon the point of beginning and the course, and Mitchell and Skidmore ran the course and set stakes upon the line; the defendant removed what he had already built upon this line, and made a portion of his fence; that for some cause he did not finish it; but last spring (1849) he continued the fence; a complaint was again made and the same neighbors were again called in; the plaintiff did not find any fault with what had been formerly done, but seemed to complain, according to Skidmore's statement, that the fence was not on the line as adjusted by them. That if the jury believed, from the evidence, that Davis, (the plaintiff,) at that time, acquiesced in the line as run out by Mitchell and Skidmore, and that the defendant had set his fence upon that line it would be sufficient; that the whole question was one of fact for the jury, and might be stated thus: "Did the defendant put his fence upon the line as marked out by Skidmore and Mitchell, and was that done with the consent of the plaintiff?" The plaintiff's counsel excepted to all that part of the charge declaring that the title did not come in question; and that a verbal agree-

ment to change the boundary line was sufficient. The jury found a verdict for the defendant.

*T. C. Pinckney,* for the appellant, submitted the following points and authorities. I. That the possession of the premises by the appellant, for the length of time stated in the case, gave him a complete title up to the old division fence, whether that fence was crooked or straight, or upon the true line or not. (*Adams on Eject.* 77, *and notes.* 3 *John.* 8, 269. 9 *Id.* 61. 1 *Cowen,* 613. 4 *Wend.* 313. 6 *Id.* 469. 3 *Har. & J.* 329.) II. That *parol evidence* of a *verbal agreement* as to a new division or boundary line was within the statute of frauds, and inadmissible ; and that the objections and exceptions upon the trial on the part of the appellant in that respect were well taken. (5 *John.* 272. 7 *Id.* 205. 9 *Id.* 61. 15 *Wend.* 380, 588.) III. That within the statute of frauds no interest in lands can pass, except by deed, or conveyance, or instrument in writing, subscribed· by the party, or his agent. (2 *R. S.* 194, § 6, *last ed.* 4 *John.* 81. 7 *Id.* 205. 15 *Wend.* 380, 588. · 2 *Caines,* 198. 9 *John.* 61.) IV. That his honor the presiding judge erred in charging that the title to lands did not come in question. (*Cowen's Tr. pt.* 1, *p.* 33 *to* 35, 2*d ed.* 1 *John.* 146. 2 *Id.* 185. *Code of Proc.* § 304, *sub.* 1.) V. That the judge also erred in charging that a *verbal agreement* to change the boundary line was sufficient. (4 *John.* 81. 5 *Id.* 272. 7 *Id.* 205. 9 *Id.* 61. 15 *Wend.* 380, 588.) VI. That the respondent had no right to enter the premises in question, and take down and remove the old ·fence, and erect another, in the manner stated in the case, and that the verdict and judgment herein were against law and evidence, and ought to be set aside and a new trial granted. (6 *John.* 5. 14 *Id.* 406. 19 *Id.* 385.)

*W. S. Smith,* for the respondent, submitted the following points and authorities. I. The agreement proved was not an agreement· " *to change the boundary line,*" but it was an agreement merely to *settle* or *locate* the line—the point of beginning having been agreed on by the parties. (*Jackson* v. *Dysling,* 2

Davis *v.* Townsend.

*Caines,* 198.   *Jackson* v. *Gager,* 5 *Cowen,* 383, *and cases cited, post.*)   II. The calling in of Mitchell and Skidmore was a sub-mission to locate the line; and their acts were acquiesced in by the appellant as right, and were acknowledged by him to be correct.   (*Same cases.   Sellick* v. *Adams,* 15 *John.* 197, *and note.   Robertson* v. *McNiel,* 12 *Wend.* 578.   1 *Greenl. Ev.* 103, § 88.)   III. The statute of frauds does not apply.   Title was admitted on both sides ; it was a mere agreement to settle the dividing line between them; it was not a contract for the sale and conveyance of lands, and had no ingredient of such a con-tract.   (*Boyd* v. *Graves,* 4 *Wheat.* 513.   *Jackson* v. *Gager,* 5 *Cowen,* 383.   *Robertson* v. *McNeil,* 12 *Wend.* 578.)   IV. But should it be considered that the agreement was void within the statute of frauds, then we say that the trespass complained of was committed with the full permission of the plaintiff, and this license is a complete justification.   (*Sellick* v. *Adams,* 15 *John.* 197.   *Miller* v. *The Auburn and Syracuse Railroad Co.* 6 *Hill,* 61.)   V. Besides, the plaintiff, by his own acts, is estop-ped from setting up the statute of frauds, or lapse of time, against the defendant.   (*Cox* v. *Jagger,* 2 *Cowen,* 638.   *As to the general doctrine of estoppel in pais, see* 3 *Hill,* 215 ;   6 *Id.* 531.) VI. The defendant was entitled to a verdict, under the pleadings and evidence, in any event, for the reason that the complaint stated the trespasses generally without naming the particular close ; the defendant answered it was his own soil and freehold, upon which the plaintiff took issue, and it clearly appeared that the defendant did own land in the same town.   (1 *Chit. Pl.* 4th *Am. ed.* 663.   2 *Phil. Ev.* 138, *ch.* 12, § 1.   *Ellice* v. *Boyer,* 8 *Wend.* 503.   *Rich* v. *Rich,* 16 *Id.* 663, 669.)   VII. There was no error committed by the judge on the trial.   The judgment is correct, and should be affirmed with interest and costs.

*By the Court,* BROWN, J.   The court charged the jury upon the trial of this action, " that an old fence becomes a land mark, and would, if acquiesced in for a length of time, determine the line, even though it should not accord with the true line; but if the owners desire to change it and make it straight, when it

was crooked, they could do so without a deed in writing. That the title would not pass by a verbal agreement; but if the parties verbally agreed to straighten the line, the party who acted upon such agreement would not be liable to the other in an action of this kind. In such case, his entry upon the lands would not be unauthorized, and the statute of frauds would not apply to the case. That if the jury believed from the evidence that Davis at this time acquiesced in the line, as run by Mitchell and Skidmore, and the defendant had set his fence upon that line, it would be sufficient; that the whole question was one of fact for the jury, and might be thus stated : Did the defendant put his fence upon the line as marked out by Skidmore and Mitchell; and was that done with the plaintiff's consent." The jury found a general verdict for the defendant, thus determining the question of fact in his favor; and if the charge contained a true exposition of the law applicable to the case, the verdict must stand; otherwise, it should be set aside. The action was trespass *quare clausum fregit*, and the answer denied the several tortious acts charged in the complaint, and then set up that the *locus in quo* was the close, soil, and freehold of the defendant. No deeds or other written evidences of title were read by either party upon the trial, but it was admitted that the parties were the owners in fee of adjoining lands, separated as appeared by the proof, by an ancient worm fence, the panels. of which rested upon stones where they united with each other. The proof also established that the plaintiff had been in the possession of his farm for thirty-eight years, and for the last thirty years he had occupied, claimed, and cultivated close up to the worm fence which separated the farms, and that the defendant, in pursuance of the parol agreement referred to by the court, had removed the old worm fence and erected a new post and rail fence, eighteen or twenty inches over upon the plaintiff's enclosure, and beyond the centre of the old fence, for the distance of 583 feet, which constituted the tortious entry and trespass complained of in the action. It also appeared in proof, and does not seem to have been disputed, that while the defendant was employed in the erection of a portion of the new

fence, he had notice from the plaintiff that he was placing it eighteen inches over upon the plaintiff's land, to which notice he replied that when he found he was wrong he would remove it.

It is worthy of recollection that the main issue made by the pleadings in the cause, was upon the title to the piece of ground 18 or 20 inches in width, and 583 feet in length, lying between the lines of the old and new fences, and not upon the right of the defendant to enter upon it ·under a license from the true owner, for a given purpose.  A license seeks to justify the defendant's entry, not by a claim of title to the *locus in quo* in hostility to the plaintiff's right; but it admits his title and pleads his authority and permission, as a justification for whatever may have been done.  Chancellor Kent, in his commentaries, (*vol.* 3, 452,) notices briefly the distinction between interests in lands, which the statute of frauds requires should be in writing, and a license to enter thereon, which may be by parol. The distinction is also given by Chief Justice Parker, in *Cook* v. *Stearns*, (11 *Mass. Rep.* 537,) in language better suited to my present purpose, and I therefore quote it:  "A license is technically an authority given to do some one act, or a series of acts on the land of another, without passing any estate in the land.  Such as a license to hunt in another's land, or to cut down a certain number of trees.  These are held to be revocable when executory, unless a definite term is fixed, but irrevocable when executed."  "But licenses, which in their nature amount to the granting of an estate, for ever so short a time, are not good without deed, and are considered as leases and must always be pleaded as such.  The distinction is obvious.  Licenses to do a particular act do not in any degree trench upon the policy of the law which requires that bargains respecting the title or interest in real estate, shall be by deed or in writing. They amount to nothing more than an excuse for the act, which would otherwise be a trespass.  But a permanent right to hold another's land for a particular purpose, and to enter upon it at all times without his consent, is an important interest which ought not to pass without writing, and is the very object provided for by our statute.

Davis *v.* Townsend.

This sensible and lucid statement of the distinction—which some writers imagine is subtle and difficult to discern—between those interests in, or rights to the enjoyment of land which the statute of frauds requires to be in writing, and a mere license to enter and do a particular act, will serve to illustrate what would have been the condition of the defendant in this action, had he relied upon the parol license to enter and remove the ancient fence, and erect a new one where it now stands, and what must, inevitably, be the consequence when he pleads *liberum tenementum*, and claims to hold the premises as his own by a title adverse, and paramount to that of the plaintiff. The instruction given to the jury " that a title would not pass by a verbal agreement, but if the parties verbally agreed to straighten the line, the party who acted upon such agreement would not be liable to the other in an action of this kind," would have applied with justice and truth to the acts of the defendant, done before the plaintiff signified his dissent, had the defense rested upon the license. But when the defendant goes beyond that and relies upon the title, he is bound to show that he was the true owner at the time of his entry, or to establish that the parol agreement consummated and carried into effect by such entry, was sufficient in law to transfer the title from the plaintiff to the defendant.

No deeds or other written evidences of title were produced by either party, upon the trial; yet I think the plaintiff's title, as it appeared, was too clear to admit of any dispute. He was the admitted owner of the farm adjoining the lands of the defendant, the exterior fences of which enclosed the premises in dispute, and his title to these very premises consisted of an occupation within a substantial enclosure, accompanied by a claim of title, and the actual cultivation close up to the old fence for the space of thirty years. Until some five or six years before the trial, no question seems ever to have been raised between the proprietors, in respect to this line. It had been settled and established by the ancient fence ; the parties had claimed up to it, and the plaintiff had certainly cultivated up to it for a period of time sufficient to bar an entry. It was, therefore, not an

unknown, uncertain and undefined boundary, for it was recognized by the adjoining cultivation, and marked out by the lasting monument of a substantial fence. The parties in their conversations with each other, admitted—it is true—and the witnesses understood that the line was originally a straight line, and they spoke of making it a straight line ; but these conversations and verbal admissions can not overcome the legal effect of the plaintiff's occupation, claim of title, and cultivation for so great a length of time, or operate to divest him of the rights he acquired thereby. (*Jackson* v. *Ogden,* 7 *John.* 238. *Rockwell* v. *Adams,* 7 *Cowen,* 761. *Rockwell* v. *Adams,* 6 *Wend.* 467.) At the time the defendant put the new fence upon the line marked out by Skidmore and Mitchell, the plaintiff must be regarded as the true owner of the lands in dispute ; and the question now is, whether the parol agreement mentioned by the witnesses and referred to by the court, the effect of which is to transfer from the plaintiff to the defendant the title to the piece of land, 18 or 20 inches in breadth, lying between the lines of the new fence and of the old one, is such as the law will recognize and uphold.

Disputed lines and indefinite and uncertain boundaries are incidents which attend upon the titles to land whenever it is appropriated to private use, and becomes the subject of private property. They have their origin in the impossibility of measuring out large tracts of wild uncultivated land with mathematical precision ; in the inattention and indifference of the first settlers ; in the errors unavoidably made in the original surveys ; in the practice—not unfrequent—of marking out and locating lots upon paper, and making grants without running the lines or measuring the ground ; and in the decay and destruction of marked trees and other monuments. They become, in process of time, fruitful sources of legal controversies, perplexed with so much doubt and uncertainty that neither the learning and experience of the judges, nor the intelligence and good sense of juries, are in all cases, a guaranty that they will be adjusted upon the basis of truth and right. Hence, amongst other reasons, we have the rule to which the courts

Davis *v.* Townsend.

have constantly adhered, that an actual location of a division line between the adjoining lands of different proprietors, however erroneous, shall control the courses and distances in the title deeds, when acquiesced in for a length of time sufficient to bar an entry. Agreements made in respect to disputed boundary lines are not within the statute of frauds, because they can not be considered as extending to the title; nor do they have the operation of a conveyance, so as to pass the title from one to another. The object is not to pass the estate, or to make a conveyance and transfer to A., of lands which belong to B: but such agreements proceed upon the fact that the true line of separation is not only fairly and truly in dispute, but that it is also to some extent undefined and unknown. They recognize and confirm the title of both the contracting parties to the lands, of which they are respectively the real owners, and seek only to distinguish and place beyond the reach of future doubt, the true line of separation between them. To bring an agreement in respect to lands within the operation of the statute of frauds, it must, in effect, create, grant, assign, surrender or declare some interest or estate in lands, other than a lease for the term of one year; and whenever it is designed to have this effect, it must be in writing and be subscribed by the party granting or creating such estate or interest, or it is absolutely void. It has been repeatedly held, that a parol agreement to ascertain and establish a boundary line between the owners of adjoining lands, which is in dispute, and in some degree unknown and undefined, either directly by the parties themselves, or through the medium of a submission to the award of others, is not an agreement which extends to the title, and therefore not within the provisions of the statute of frauds. As has been justly said, "it has no bearing whatever upon the abstract question of title, no more than the testimony of a witness showing the practical location of a deed according to its courses and distances." (*Sellick and Sellick* v. *Addams*, 15 *John.* 197. *Jackson* v. *Gager*, 5 *Cowen*, 383. *Robertson* v. *McNiel*, 12 *Wend.* 578, 583.) But where the line is already well known and established; where it has been recognized and acquiesced

Davis *v.* Townsend.

in by the adjoining owners; and more especially where it is indicated and marked out by fences or other permanent monuments to which they have claimed and occupied for a sufficient length of time to bar an entry, a parol agreement, to change it, differs entirely in its effect from that to which I have before referred, and does extend to the title. Its operation is not confined to the settlement of a dispute, or the removal of a substantial ground of controversy; to locate and mark out a boundary line, and thus make positive and certain for all future time that which before was vague and indefinite; but if it could operate at all, it manifestly must be to grant, assign, or surrender to one or to both the contracting parties, an interest or estate in lands to which, at the time of making the agreement, he or they, as the case might be, had no title or claim whatever. That they have no other object than to obtain a better or a more convenient boundary, and that each will receive a fair equivalent for all that he gives away, can not affect the legal aspect of the question. The law, for wise and just purposes, prescribes certain forms and solemnities to be observed in passing an interest or estate in lands; and pays no regard whatever to the motives of those who may become parties to the conveyance, or to the extent of territory to be affected thereby. These forms and solemnities must be observed, or the legal estate will remain precisely as if nothing whatever had been done. Equity, it is true, will enforce the performance of a parol agreement for the sale of lands, against a vendee who has been put into possession, or against a vendor who has been paid and received the purchase money, upon the ground that "where one party has executed his part of the agreement, in the confidence that the other party would do the same, it is obvious that if the latter should refuse, it would be a fraud upon the former to suffer this refusal to work to his prejudice." (2 *Story's Eq. Jur.* 70, § 759.) And a case might very well occur where the equitable power of this court might be successfully invoked to enforce and maintain a parol contract to straighten a crooked boundary line, by an exchange of the lands necessary to effect that object, where the parties mutually obtained an equivalent for the

lands surrendered, and the contract had been executed by the delivery of the possession. In the present case, as I read the testimony, the plaintiff receives no consideration or equivalent for the lands upon which the defendant has entered; and so far from having put the defendant in possession and executed the agreement, he signified his dissent as far as he could at the time the defendant was in the act of erecting the fence.

The plaintiff's title to the *locus in quo* was established by the evidence upon the trial, and he was, therefore, in my judgment, entitled to a verdict in his favor. I also think the learned justice erred when he charged the jury that the statute of frauds did not apply, and that " if the parties verbally agreed to straighten the line, the party who acted upon such agreement would not be liable to the other in an action of this kind.

There should be a new trial, with costs to abide the event.

Morse, J. concurred.

McCoun, J. dissented.

New trial granted.

