## PIERSON A. FREEMAN v. SAMUEL F. HEADLEY.

1. A parol license, which has been executed, is as effective, by way of justification of an entry upon land, or of any other act touching the realty, as would be a license in writing.

2. On a parol sale of land, where the vendor put the vendee into possession, and authorized him to take down a building standing thereon,

and such vendee, after having torn down the building, refused to take a title for the premises—*held*, an action would not lie at law against him for the destruction of such building.

This was an action on the case, and was tried in October, 1864, before the Circuit Court of the county of Morris. It appeared from the evidence, that the defendant agreed, by parol, to purchase a small lot of land, upon which stood a building of the plaintiff; that a deed was prepared, but before it was delivered, the defendant sent to the plaintiff and asked his permission to take down this building. Such consent was given. The plaintiff, who was a witness in his own behalf, thus stated this fact: he says, a Mr. N. came to him and stated " that Headley told him to call on me and ask me if I had any objection to taking the buildings down, and I said no; he said Headley would be back in a day or two, and would then carry out the contract according to our understanding; I told him it would make no difference if he fulfilled." It was further proved that, subsequently, the defendant had the building torn down, and part of the materials carried off the premises to his own property. Under these circumstances, a disagreement arose between the parties with regard to the extent of the lot which was to be conveyed, the defendant insisting that it should embrace a small gore, to which the plaintiff had no title. The plaintiff denied this allegation; but, after a delay of some months, obtained a title to the gore, and tendered a deed for the whole tract. Such tender was not accepted by the defendant, on the ground that the purpose for which he had designed to use the lot had been frustrated by the lapse of time.

The action was in tort, some of the counts setting out the possession of the land by the defendant, under a parol agreement to purchase, and alleging that he tore down the building in question against the will, and without the license of the plaintiff. There were also counts in trover for the buildings and materials.

The judge who presided, among other things, charged the jury, first, "that if the plaintiff gave permission to the defendant to take down the buildings on the understanding sworn to by the plaintiff, that is, on condition that the defendant should take the property under the agreement, the plaintiff must recover for such taking down. And, second, that the title of the plaintiff to the premises in question, or to any part thereof, cannot be disputed in this action, and that it was immaterial in this action whether the plaintiff had title to the gore or wedge or not." These points, as well as others, which it is not necessary to mention, were excepted to.

The case came before this court by writ of error, and was argued before the CHIEF JUSTICE, and Justices ELMER and BEDLE.

For the plaintiff in error, *H. C. Pitney.*

For the defendant, *J. Vanatta.*

The opinion of the court was delivered by

BEASLEY, C. J. The gravamen of this action was the tearing down of a building. At the time the defendant did this act, he was in possession of the premises, under an agreement by parol for their purchase. It was also proved that such act was done by the permission of the plaintiff. At the trial, the point on which, in this respect, the case was put was, that such permission was conditional, on the taking by the defendant of the property on the terms agreed upon. The judge who presided accordingly charged the jury, that if such was the case, and the defendant refused to accept the title which was offered to him, the plaintiff was entitled to recover.

Upon mature reflection, I am satisfied there was error in this instruction. The demolition of the building, at the time it occurred, was not an unlawful act. The defendant was in

the rightful possession of these premises, and did the act complained of by the consent of the plaintiff. It is true, that such consent was by parol, and, therefore, for all the purposes of an executory agreement, was not enforceable, by reason of the statute of frauds. But to the extent to which the contract between these parties had been executed, it was, as a defence, in all respects legal, efficacious, and obligatory. A vendee, who, under a treaty for purchase, enters, with the consent of the vendor, into the possession of land, is not a trespasser, nor can he be treated as such. A parol license, which has been executed, is as effective, by way of justification of an entry upon land, or of any other act touching the realty, as would be a license in writing. The rule of law upon this subject is entirely at rest. I refer to the following lines of cases, to show the extent and application of the principle. Thus, it has been repeatedly held, that ejectment will not lie against a person who has taken possession of land by force of a parol contract to purchase, before notice from the vendor of a rescission of such contract. *Right* v. *Beard*, 13 *East* 210; *Jackson* v. *Ostrander*, 9 *Johns.* 330; *Jackson* v. *Moncrieft*, 5 *Wend.* 29; *Doe* v. *Stennett*, 2 *Esp.* 717.

So a verbal license to enter upon land to remove goods, the property of the licensee, is valid until revoked, and will afford a perfect defence to an action for such entry. *Whitmarsh* v. *Walker*, 1 *Metc.* 313; *Wood* v. *Manly*, 11 *Adol. & Ell.* 34.

In *Pierrepoint* v. *Barnard*, 2 *Seld.* 279, the Court of Appeals of New York was of opinion, that a license to cut standing timber was a full justification for all things done within its scope, and that the licensee acquired a right to the timber which had been felled before the license was recalled, which could not be divested by its subsequent revocation. In *Lyron* v. *Blakeman*, 22 *Barb.* 336, a similar license to dig and carry away gravel from the land of the plaintiff, was maintained as a good answer to an action of trespass, *de bonis asportatis;* and in *Davis* v. *Townsend*, 10 *Barb.* 333, a like view was taken with regard to a license to a tenant to

remove buildings erected during the term. And nowhere is this principle more strikingly illustrated than in the case of *Miller* v. *The Auburn and Syracuse Railroad Company*, 6 *Hill* 61, for the court there held, that although a license by parol was, at all times, revocable, yet, notwithstanding, it afforded a complete defence for everything done in accordance with its terms; and that, consequently, the plaintiff could not sustain his action against the company for building and continuing a railroad on his land by his verbal permission, it appearing that the damages sued for had accrued prior to the revocation of such authority.

These cases are amply sufficient to exemplify the application and practical bearings of the rule in question. There can be no doubt, therefore, that the authority granted by the plaintiff to the defendant to take down the building, the prostration of which forms the substance of this action, gave an entire legality to the act of the defendant in that respect. The act, therefore, was not originally tortious; could it become so by the subsequent conduct of the defendant? At the trial the view appears to have been entertained, that the license was dependent on the condition that the defendant would accept a conveyance of the land on the terms settled between the parties. But I am not aware of any principle of law whereby a party to a contract which has been partly performed by him, can be converted into a trespasser by a failure on his part to complete such contract. In all cases in which a purchaser is permitted to enter upon land before the execution of the conveyance, it is on the implied understanding or condition that his agreement to take the land will be complied with; and yet it has never been supposed, that on a failure to comply, such purchaser becomes a trespasser, *ab initio*. Even a tortious abuse of the privilege to enter, according to established maxims, would not have this effect; for it is the old and well known distinction, that a man will generally become a wrong-doer, retrospectively, by an abuse of the authority which the law confers, but never from an abuse of an authority derived from an individual.

Ever since the Six Carpenters' case, 8 *Coke* 290, this has been the accepted principle; and in that case it was said, "but when the party gives an authority or license himself, to do anything, he cannot, for any subsequent cause, punish that which is done by his own authority or license." And in *Allen* v. *Crofoot*, 5 *Wend.* 506, in conformity with this venerable precedent, the doctrine was maintaind, that where a party had entered a dwelling-house by license, he could not be considered a trespasser, *ab initio*, by reason of any unlawful act done after such entry. In the present case, therefore, assuming that the permission accorded to the defendant to enter was induced by his promise to take the title and pay for the land, and that the defendant refused, without just cause, to comply with such stipulation, such breach of contract could not reach back and annul the plaintiff's license to take down the building. If the contract alluded to had been in writing, this effect, it is presumed, would never have been assigned to it; in such event, the remedy would have been by suit on the contract itself, by means of which the plaintiff would have been indemnified for all his damages, by reason of its non-performance by the defendant; but it is clear, that with regard to the license to enter and destroy the building, which has been executed, so far the contract must be deemed to be possessed of the same legal efficacy as though it had been committed to writing. The essence of the rule is, that a party who has authorized a certain thing to be done, cannot, under any circumstances, treat such act as a tort, because this would be to alter the substantial nature and legal consequences of such act. If, in this case, the plaintiff has no contract by force of which he can be reimbursed for his losses by an action at law, it is a position of his own choosing. The mischance could have been avoided by a slight degree of vigilance. A vendee sometimes finds himself under a similar embarrassment: for if the defendant in this case, instead of taking down, had put up, a building on the premises in question, and the plaintiff had refused to execute a conveyance, the former would, at

common law, have had no legal claim for the cost incurred in such improvement. *Gillet* v. *Maynard*, 5 *Johns. R.* 85 ; *Smith* v. *Administrators of Smith*, 4 *Dutcher* 217. The sum of the matter is, the parties have trusted each other in a manner which the law, on the grounds of policy, does not countenance; but under the circumstances of this case, it is clear that the plaintiff was not destitute of an adequate remedy. He should have insisted on a specific performance of his contract, and which, on the score of its part performance, a court of equity would have enforced. But, in my opinion, he cannot acquiesce in an abandonment of a full performance of the contract, and then claim to treat as unlawful those acts of the defendant which were done with his sanction.

In the recent case of *Pratt* v. *Ogden*, 34 *New York* 20, the Court of Appeals of New York, giving full effect to the doctrine above stated, decided that persons taking possession of land under a contract of purchase, and a license to cut timber, could not be held liable for cutting the timber thereon, while the license was operative, even though by non-compliance with the contract to purchase they had forfeited all right to the land. This adjudication rests on the principle involved in the facts of the present case, and was, it is conceived, correctly decided.

I think, on this ground, that error is manifested in the record now before us.

And if any doubt had been entertained on this first head, it is conceived there could be none whatever with respect to the presence of error, in the second point of the charge to the jury. The first point charged was, that if the plaintiff gave permission to the defendant to take down the buildings, on condition that the defendant would take the property under the agreement, the plaintiff must recover for such taking down; and the second point was, that the title of the plaintiff to the premises in question could not be inquired into in this action. It was a part of the defence attempted to be made in the case, that the plaintiff had broken

his agreement by not conveying the premises within the time contemplated in the contract.

Upon the assumption that the license of the defendant to remove the building was conditional on his compliance with his agreement, and that the non-performance of such condition was to have the effect to render unlawful his previous acts done by the consent of the plaintiff, it seems to me that the question of the plaintiff's title was clearly involved in the case. The jury was instructed that the license was conditional on the defendant's taking the property; if, therefore, this be so, it would seem to have been plainly competent for the defendant to show that it was the fault of the plaintiff which had prevented the fulfillment of such condition. Suppose the plaintiff had refused to make any conveyance, could it be pretended that, notwithstanding his license, he could maintain his suit against the defendant, who was in no fault, founded on a tortious destruction of the building? And yet if the plaintiff had no title to the property, the offer of a conveyance was an unmeaning ceremony, possessed of no legal value. So, too, if his title failed to any part of the property embraced in the contract. The effect, therefore, of the evidence relating to a defect of the plaintiff's title, was to discharge the defendant from the legal consequence, whatever it might be, of a non-compliance with the agreement on his part, and to shift that quality of the transaction to the side of the plaintiff. To make this endeavor unlawful, it must be assumed as a legal principle, that the plaintiff could, after the execution of his license, revoke it, in the absence of all default on the part of the defendant, because a refusal of the latter to take a deed for land to which the former had no title, could not be considered a violation of the agreement. Consequently, my conclusion is, that conceding the first legal proposition of the charge to have been well founded, the question with regard to the title of the plaintiff became one of vital importance.

The judgment, on these grounds, should be reversed.

AFFIRMED, 4 *Vroom* 523.