GEORGE S. VOSBURGH, Respondent, v. WILLIAM B. TEATOR and ANDREW TEATOR, Appellants.

It is the policy of the law to permit parties to settle and adjust doubtful, uncertain and disputed facts between themselves; and when so settled, upon a good or valuable consideration, not to permit them afterwards to be brought into dispute.

Where there is a disputed, indefinite or uncertain boundary line between the lands of adjoining proprietors, they may, by parol or by arbitrament, fix upon a line between themselves.

But an agreement by parol to establish a *new* line, where the boundary was not indefinite or uncertain, would be void by the statute of frauds.

That when the disputed or uncertain line is fixed and adopted by the parol agreement of the parties, it is binding upon them, their heirs, etc., not by way of transfer of title, but by way of estoppel.

In determining the correctness of any particular part of the charge of the judge, we may look into the testimony to ascertain to what part thereof it may have been applied; and we should look into other parts of the charge to ascertain what additions, explanations or modifications may have been made to such particular charge.

It is not to be presumed that the jury have been misled by a particular portion of the judge's charge, when the necessary qualifications have been made in other parts thereof.

APPEAL from General Term, second district. The action was trespass, for cutting a tree on plaintiff's land, commenced before a justice of the peace. The defendant interposed a plea of title. The action was thereupon discontinued and commenced in the Dutchess County Court, and was tried there. The plaintiff recovered a verdict for twenty-five dollars. This judgment was appealed to the General Term, where it was affirmed, and an appeal was taken to this court. The plaintiff and defendants were owners of adjoining farms. There was a dispute between them as to the boundary line. The plaintiff's land was north, and the defendants' south of this line. There was a stone fence which was claimed by the plaintiff to be the true line. This fence was some twelve feet or more south of certain chestnut trees. The cutting of one of these trees by the defendant was the trespass complained of. The plaintiff produced evidence on the trial that

he and his predecessors in title had been in possession of the *locus in quo* as far back as 1827 or 1828, and before that time. The defendants produced evidence, by surveyors and by proper title, that the true line was north of these chestnut trees, and also that the stone fence was the southerly fence of a lane or road that was taken from the land of the defendants' predecessors in title, to give the privilege of coming to water on defendants' land, and. that the plaintiff's possession of the *locus in quo* was by special permission of the defendants' predecessor. There was also evidence on the part of the defendant, that there was a dispute between the parties in respect to this division line between these two farms, and that in May, 1846, the parties agreed to procure a surveyor, who should run the line between them, and that wherever he should run the line the fence should be put and settled. This was controverted by the plaintiff, who proved and offered evidence to show that it was only the westerly end of the line between the parties that was in dispute, through what was called the swamp, and that the agreement to submit to the surveyor's line was limited to the swamp, and that no agreement was ever made or consented to to change the line where the stone wall was south of the chestnut trees. It was a disputed fact by the evidence, whether any line was run by the surveyor north of the chestnut trees. Through the swamp the line as run by the surveyor took a strip of land from the defendants, and the plaintiff immediately made his fence on that line. On the east end of the line, as the defendant claims it to have been run and staked out, the survey took land from the plaintiff, including the chestnut trees. The defendant moved a few lengths of fence from the point where the plaintiff stopped making fence, and turned it to meet the stone wall in question, and by his proof obtained the plaintiff's consent to defer making the remainder till a more convenient season. This was in 1846. In 1849 the defendant commenced removing his fence upon the line as he claimed it to have been run, and cut down one tree, when he was forbidden, and this action brought for the trespass.

The judge charged the jury as will appear in the opinion.

*A. J. Parker*, for the plaintiff.

*J. H. Reynolds*, for the defendants.

DENIO, Ch. J.   The plaintiff and the defendants were the owners of adjoining farms, the plaintiff's lying on the north and the defendants' on the south of the division line.   The question is as to the true location of that boundary line at the point where the defendants, in 1849, removed an existing fence farther north, and cut down a chestnut tree standing north of the old, and south of the new, location of the fence.

It appeared that the parties claimed title to their respective farms under Garritt Van Benthuysen; the plaintiff's predecessor, having entered under a lease for sixty-six years, executed on the 23d May, 1789, and parties holding that title having subsequently purchased the premises in fee under a title arising upon the foreclosure of a mortgage executed by the same G. Van Benthuysen in 1818.   The defendants made out their title under a deed from Van Benthuysen, executed on the 9th May, 1798.   The description of the land contained in these papers is not stated in the case.   It cannot, moreover, be determined which of the parties had the paper title to the premises.   The parcel last granted was probably bounded by the other; but this is not stated, and neither the *termini* or the course of the line of the first granted farm is specified in the case.   It was proved, however, that the plaintiff, or those under whom he claimed, had been in possession, up to a fence running south of the point where the trespass was alleged to have been committed, a great many years; much longer than would be necessary to found a defense of adverse possession.   The effect of this was attempted to be met by evidence that those under whom the plaintiff claimed held a strip north of that fence, and including the place in dispute, by permission and license of the owner of the defendants' farm for his use as a lane, and for accommodation as to a run of water; and also by evidence that the plaintiff and defendants had agreed and settled upon the boundary line by agreement, according to a survey made by a Mr. Beckwith, a surveyor, in 1846, and had

removed their fences accordingly. There was a good deal of contradictory evidence on these points. But the plaintiff swore, as a witness on his own behalf, that there was no dispute about the line at the point in question, but that the controversy was confined to a place not defined by any fence, and on another point of the line between the farms. He denied having agreed upon a line at this place; and Beckwith, the surveyor, swore, in effect, that he did not consider the line run by him a true one, not being satisfied as to the starting point. The fence at the place now in question was not immediately removed; and when the defendants did remove it, in 1849, the plaintiff forbade them.

This outline will enable us to examine the accuracy of the charge in the particulars to which the exceptions taken are now insisted on. The judge charged that if the plaintiff was in possession of the land on which the tree stood, the cutting down of which was the principal act of trespass, when the defendants cut it down, he was entitled to recover, unless the defendants had title and were entitled to the possession; and also that if the plaintiff then had the title and the possession he had a right to recover. It is objected to this portion of the charge that it excludes the consideration of the evidence of the settling of a disputed boundary line. This view cannot prevail, because the judge did, in another part of the charge to be immediately mentioned, lay down what he considered to be the law upon that evidence. The positions of the charge above mentioned are certainly correct in the abstract, and I do not see how they could mislead, inasmuch as the evidence of the agreement was considered in a subsequent part of the charge. The next portion of the charge is admitted to be correct in law, but it is said to be erroneous in its application to the case, for the same reason that it does not allow any force to the alleged agreement settling the line. It was, that if the defendant had the paper title it must prevail unless the plaintiff had acquired a title by adverse possession, which would bar an entry. The same answer holds to this, as did to the first mentioned exception. It was, in effect, hypothetical, as if the

judge had said that such was the law, unless the defendant established a defense of a line settled by agreement, as to which he instructed them subsequently. That part of the charge, in which that instruction was given, was as follows: " That the agreement claimed by the defendants to be established in this case, fixing the boundary, if any agreement there was, would be void and of no effect if the true boundary was already known and established, and was not indefinite or uncertain." Before this, he had said, that in case this was a disputed, indefinite and uncertain line or boundary, then the parties have a right to fix upon a line by agreement, and such established line, when made and settled, becomes binding upon the parties as the true line between them. This instruction may have had reference to the testimony which asserted that it was another part of the line, where there was no fence, which was in dispute, and that at this place it was not disputed; but it is more significant as asserting the principle of law, that parties cannot alienate their land by parol, where the object is to make a new line and not settle a dispute about an uncertain one. If the land at the place in question was, in the view of the parties, confessedly the plaintiff's, it could not become vested in the defendants by any parol arrangement without a violation of the statute of frauds. (*Terry* v. *Chandler*, 16 N. Y., 354.) The plaintiff had sworn positively that there was no dispute respecting that part of the line.

The judge was requested by the defendants' counsel to charge that if the paper title of both parties covered the land in dispute, then a parol agreement fixing the line, was good. It is difficult to see how such a state of things as this proposition supposes could exist. But if it could, it was a sufficient reason for not giving that instruction that there was no evidence as to the extent of the paper title of either of the parties. It was shown that they had conveyances of their respective farms proceeding from the same source of title, the plaintiff's being the oldest title, but how they bounded the land conveyed at the point where the farms abutted upon each other, if they did adjoin, as is to be inferred, is, as I have said, nowhere stated in the case. There

is nothing, therefore, so far as we know, upon which the desired instruction could have been based.

I am satisfied that none of the exceptions are well taken, and think the judgment should be affirmed.

POTTER, J.  The real questions in this action to be tried were, First. Was there fairly and truly a disputed boundary line between the parties to this action? If there was such a disputed line, then, Second. Was this disputed line settled between the parties, and such acts of adoption of the line taken upon the settlement, as to make it a binding line between them? These facts being controverted, were peculiarly questions for the jury, and if the judge, on the trial, committed no error in submitting these questions to the jury, their verdict must be conclusive. It is seen that on the trial of an action of trespass, to which the defense set up is title in the defendant, the plaintiff, in the first instance, must at least show possession. This he did, with such evidences of uninterrupted occupation and claim of title for a long period of time as was sufficient, if uncontradicted, to entitle him to recover. The defendant then offered evidence, tending to prove a dispute as to the boundary line, a proposition to settle the dispute by a survey, the agreement of the parties as to a survey, and to the choice of a surveyor, the running of a line by the surveyor, the setting of stakes, the adoption of the line by the plaintiff at the west end of the line by making a fence on such line, the making of a few panels of fence by the defendant on the other end, and the consent of the plaintiff that the defendant might defer making the remainder of his part to some convenient day. The questions of running an entire line, and the establishment of any division line between the parties by the surveyor, were controverted, and were facts for the jury. As, also, was the agreement by the plaintiff, that the defendant might subsequently make or remove his portion of the fence. The defendant also produced deeds, surveys and other evidences, showing that the title of the *locus in quo* was in him; and also, evidence that the plaintiff's predecessors in title occupied the premises in dispute

by special permission of the predecessors of the defendant for the purpose of access to a watering place.   These leading features in the facts seem necessary to be stated, in order to understand the application of the judge's charge, to which exceptions were taken, and now earnestly urged to be erroneous, and upon which the case must be decided.   The two first propositions excepted to were as follows :

" In case the plaintiff was in possession of the land upon which the chestnut tree stood, and when thus in possession, if the defendants cut it down, the plaintiff is entitled to recover, unless the defendants were the owners of the land and entitled to the possession under such title at the time the tree was cut."

" That in case the plaintiff has the fee of the land in dispute, and was in possession thereof under the same when the tree was cut, then he is entitled to recover."

It is argued that those propositions misled the jury, for want of qualification, and thus keeping from them the true issue, to wit : Whether the parties having a disputed boundary line, had settled this by establishing a line by agreement.   This argument would have great force had the charge ended with these exceptions, or had the judge omitted to charge elsewhere as to the effect of establishing such a line by the parties, or had he refused to charge at all upon that question, after request made.   I think it may be regarded as settled law at this day, that the settlement of a disputed boundary line between the parties by arbitrament or parol, and especially where equivalents of benefit or advantage are mutually received and acted on, will bind the parties to it, not by way of transferring title from one to the other, which the statute of frauds prohibits, but operates by way of estoppel.

It is the policy of the law to allow parties to settle and adjust doubtful and disputed facts between themselves, and when such matter, which before was uncertain, has been established by agreement between the parties, upon good consideration passing between them, they are not permitted afterwards to deny it.  (*Jackson* v. *Dysling*, 2 Caines, 197 ; *Sellick* v. *Adams*, 15 Johns., 197 ; *Shepherd* v. *Ryus*, id.,

497; *Jackson* v. *Gajer*, 5 Cow., 387; *Robison* v. *McNeall*, 12 Wend., 580; *Davis* v. *Townsend*, 10 Barb., 333.)

The two propositions above charged were sound, if there was proof to sustain this, the plaintiff's theory of the case, and I understand the charge was only intended to be applicable to that theory, because a subsequent portion of the charge contains the qualification which, it is claimed, was thus erroneously omitted. The judge, subsequently in his charge, said:

"That in case this was a disputed, indefinite, uncertain line or boundary, then the parties have a right to fix upon a line by agreement, and such established line, when made and settled, becomes binding upon the parties as the true bound ary between them."

Treating this proposition as a qualification of the other two, which is the fair way to consider and interpret the charge, I am unable to see that error was committed.

The following proposition is to be regarded as a continuation, and also an explanation of the last preceding one:

"That the agreement claimed by defendants to be established in this case, fixing the boundary, if any agreement there was, would be void and of no effect if the line or boundary was already known and established, and was not indefinite and uncertain."

The simple meaning of this, upon a fair reading of it, is, that parol agreements to change or establish boundary lines, where there is no dispute or uncertainty, are within the statute of frauds, which require a writing to pass title, thus distinguishing between cases where the line is disputed or uncertain, and those which are not so, the former being binding upon the parties, the latter not. This construction of the language of this charge, it seems to me, is that which the ordinary or common mind would accept as the fair understanding of the two last propositions, and I do not think them subject to criticism beyond that. The charge, as so understood, is undoubtedly the law. (See authorities, *supra*, and *Rockwell* v. *Adams*, 6 Wend., 467; *Same* v. *Same*, 7 Cow., 161; *Terry* v. *Chandler*, 16 N. Y., 354.)

The three next propositions as charged are as follows:

"That if the plaintiff's paper title does not cover the land in dispute and the defendants' does, then the defendants are entitled to your verdict, unless the plaintiff has acquired a title by an adverse possession, which would bar an entry by the defendants under their paper title, and an adverse possession must be established by the party claiming it against prior paper title."

That to make out an adverse possession sufficient to bar an entry under a prior paper title, the party claiming it must establish a continuous, uninterrupted possession of the land in dispute for twenty-five years, if prior to the year 1828 (prior to the Revised Statutes), in hostility to the proper paper title.

But that since the Revised Statutes, a continuous, uninterrupted possession of the land in dispute for twenty years, in hostility to the proper paper title, is sufficient; but such twenty years' possession must be prior to the commencement of the action, and under a claim of title.

To the two latter of these three propositions no point is taken on the argument. To the first, the same objection is repeated as before, that it assumes the title, and the plaintiff's actual possession, to be the only question upon which the jury is to pass; entirely ignoring the defense of a settlement of a disputed boundary line, and that by it the jury must have been misled. If the matter claimed to have been omitted be afterwards charged, it is not to be presumed that the jury had not sufficient intelligence to comprehend the qualifying influence of one proposition upon another. If the defendants' paper title did actually cover the *locus in quo*, there was evidence on the part of the plaintiff before he rested, of an adverse holding, upon which he had a right to have the law charged; and though the defendants' evidence was strong enough, perhaps, to overcome this claim of adverse holding, it was still a case of some conflict of testimony, and was a proper subject to be submitted to the jury, and the charge in this respect, upon that theory, I think, was not error.

The judge also charged: That if the plaintiff was in pos-

session of the land in dispute by the license of the defendants, such possession would not be what is termed an adverse possession.

This proposition is not now urged as error.

The counsel for defendants then requested the judge to charge the jury that if the paper title of both parties covered the land in dispute, then a parol agreement fixing the line was good; but his honor the judge refused to charge other than as above charged.

The counsel for the defendants then requested the judge to charge the jury that if the defendants' deed covered the land in dispute, then that a parol surrender, after a time sufficient to bar an entry had elapsed, was good. His honor the judge refused to charge otherwise than as above charged.

The first of these two propositions and refusals to charge only, is now urged as error.

I do not think this exception well taken. We have already said, that only in the cases where the boundary line between the parties is disputed, that a parol agreement establishing the line is good. This last proposition, so now urged as error, has no reference to a disputed boundary line between the parties, but to the land, or the *locus in quo* which was disputed at the trial. It might well happen, that the paper title of both parties covered the same land, and yet there be no dispute between the parties about the boundary line between them. The authorities recognize a clear distinction between a dispute about the title to lands, and a dispute about a boundary line. It is the confounding of these two questions, or the regarding them as identical, that has often misled parties in seeking these remedies. Whether or not actual injustice is the result of the trial, we are unable to determine; the objections are all centered in the exceptions to the charge of the judge. I do not think them well taken.

The result is, that the judgment must be affirmed.

Judgment affirmed.