HIRAM WOOD, Respondent, *v.* MICHAEL D. LAFAYETTE, Appellant.

A dispute having arisen between plaintiff, defendant, and others, in regard to the location of the boundary lines of a lot of land owned by defendant, an agreement in writing to compromise and settle the same was entered into by all the parties, one provision of which was that M. should go upon the land and designate the line between plaintiff and defendant, as the same existed when M.'s father occupied the lot. Defendant offered proof of revocation upon his part of M.'s authority to locate the line, and also proof of actual location of the line, both of which were rejected.

*Held*, that the agreement was a valid and binding one, and fixed as the true line between the parties, the one that existed and was recognized when M.'s father occupied the premises, and left only the question to be determined as to the location of that line. But that M. was simply empowered to act as arbitrator upon this question, and as such his power was revocable. That the question should have been submitted to the jury to determine the location of the line, and that the rejection of the testimony, both as to revocation and location, was error.

(Argued November 16th, 1871; decided November 20th, 1871.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial district, affirming judgment entered upon verdict in favor of plaintiff, and also order denying a new trial.

This action arose in justice's court. It was for trespass in entering upon plaintiff's land, cutting down trees, etc. Defendant plead title and gave the requisite undertaking, and the action was, thereupon, brought in the Supreme Court. The parties owned lands adjoining. Defendant's land was formerly owned and occupied by James Mann, father of the James Mann referred to in the agreement hereinafter mentioned.

Upon the west the defendant joined lands with James Connor. The defendant, before the commencement of this action, removed the line fences between his lands and the lands of the plaintiff, and lands of Connor, and placed the west line fence further west upon Connor's land, and the north line fence further north upon plaintiff's land. The strip of land in dispute is twenty-four links in width, and extends across the defendant's farm. Connor soon after removed the fence placed on his lands, and on the 17th day of September, 1866, the defendant brought an action against him therefor, which action was removed to the Supreme Court upon a plea of title being interposed. The plaintiff and Jonathan Whiting were the grantors by warranty of the lands owned by Connor in dispute.

A dispute also arose between the plaintiff and defendant, at the time the defendant removed the north line fence upon the plaintiff's land, as to the location of the boundary line between them.

On the 17th day of January, 1867, the plaintiff, defendant, Connor and Whiting entered into an agreement, providing for the settlement of the above action, and of all disputes as to the location of the defendant's boundary lines.

The portions of the agreement affecting this case are quoted in the opinion.

The defendant entered upon the land in dispute, and severed timber of the value of fifty dollars, and this action was brought to recover damages therefor.

Upon the trial the defendant offered in evidence a written notice directed to all the other parties to the agreement, signed by him, stating in substance that he revoked all power and authority given to James Mann, to locate or designate the boundary line between him and plaintiff. To this plaintiff's counsel objected generally, and the same was excluded and defendant excepted.

Mann did go on and locate the line as plaintiff claimed it. Defendant offered to prove that the line designated by Mann was not the line as it existed when his father occupied the

lot, but that the latter line was where defendant claims it; which offer was overruled and evidence excluded, and defendant excepted. The jury found a verdict for defendant for fifty dollars.

*J. H. Reynolds,* for appellant. Plaintiff proved no possession of the *locus in quo,* and the verdict should be set aside as unsupported by evidence. (*Gardner* v. *Hart,* 1 Comst., 528; *Allhouse* v. *Rice,* 4 E. D. Smith, 347; *Kelley* v. *Valentine,* 21 How., 228; *Hill* v. *Draper,* 10 Barb., 450; *Vosburgh* v. *Teator,* 32 N. Y., 561; *Pratt* v. *Frost,* 5 Seld., 403; *Rathbone* v. *Staaten,* 6 Barb., 141; *Holmes* v. *Seeley,* 19 Wend., 507; *Frost* v. *Duncan and Murphy,* 19 Barb., 560; *Algio* v. *Duncan,* 39 N. Y., 313; *Hotaling* v. *Hotaling,* 56 Barb., 194.) Where boundary line is rendered certain by the deed, it cannot be changed by executory agreement or arbitration. (*Clark* v. *Withory,* 19 Wend., 320; *Jerry* v. *Chandler,* 16 N. Y., 354.) As the agreement fixes the line, it cannot be contradicted by proof. (*Stebbins* v. *Cooper,* 4 Denio, 191; *Dun* v. *Hewett,* 2 Denio, 637.)

*S. Hand,* for respondent. The agreement was to settle an uncertain and disputed boundary, and was binding. (*Vosburgh* v. *Seaton,* 32 N. Y., 567; *Baldwin* v. *Brown,* 16 N. Y., 359; *Ratcliffe* v. *Gray,* 3 Keyes, 573; *Reed* v. *Farr,* 35 N. Y., 113.) The agreement cannot be revoked save by consent of all parties. (*Union Manuf. Co.* v. *Lonsbury,* 42 Barb., 126, 141; *Hunt* v. *Singer,* 1 Daly 211 and 212; *Clarkson* v. *Mitchell,* 3 E. D. Smith, 270; *Rosenbaum* v. *Gunter,* id., 203.) Where error is relied on in excluding evidence, the case must show affirmatively it was relevant when offered. (*Van Amringe* v. *Barrett,* 8 Bosw., 373, 374; *Pratt* v. *Strong,* 33 How., 288.) The offer must be relevant and proper in all its parts or the decision excluding it will not be disturbed. (*Button* v. *McCauley,* 38 Barb., 417; *Jones* v. *Osgood,* 2 Seld., 235; *Haggart* v. *Morgan,* 1 Seld., 427, 428; *Caghlan* v. *Dinsmore,* 35 How., 419; *Magee* v. *Badger,* 34 N.

Y., 248.)    Plaintiff's possession was assumed on trial, and defendant is estopped from disputing it. (*People* v. *Cook*, 4 Seld., 78; *Sipperly* v. *Stewart*, 50 Barb., 66; *People* v. *Hurlbutt*, 44 Barb., 132; *Page* v. *Fazackerly*, 36 Barb., 396; *Stewart* v. *Smith*, 14 Abb., 75; *Rosebrooks* v. *Dinsmore*, 36 How., 138; *Manice* v. *Brady*, 15 Abb., 173; *Cheney* v. *Beals*, 47 Barb., 526; *People* v. *Third Ave. R. R. Co.*, 45 Barb., 66.)    If plaintiff had been out of possession, upon being restored he was entitled to recover for intermediate injuries. (*Van Deusen and others* v. *Young*, 29 Barb., 9, 18; *Dewey* v. *Osborn*, 4 Cow., 338; *Morgan* v. *Varick*, 8 Wend., 594; *Schamerhorn* v. *Buell*, 4 Denio, 425; *Rockwell* v. *Saunders*, 19 Barb., 481.)    A new trial will not be ordered when the facts proved are conclusive, and it is seen they cannot be changed. (*Brown* v. *Bowen*, 30 N. Y., 519, 541, 542; *Johnson* v. *Hathorn*, 2 Keyes, 476, 484, 485.)

GROVER, J.    The case shows, that there was a *bona fide* dispute between the defendant and Connor, in respect to the true west boundary of the defendant's forty acre lot, and also between the plaintiff and defendant in respect to the north boundary of the defendant's lot; that Jonathan Whiting was the defendant's grantor of the premises with covenants of warranty; that a suit was pending in the Supreme Court between the defendant and Connor, involving the question as to the west boundary; that for the purpose of settling this suit and the entire controversy as to west and north boundary lines, and also the amount to be paid by Whiting to the defendant, in satisfaction for the breach of the covenants in his deed to the defendant; Connor, defendant, plaintiff who owned the lands adjoining the forty acres on the north, and Whiting, entered into a written agreement, by which the action of the defendant against Connor, was settled upon the following terms as therein stated : " Jonathan Whiting agrees to procure a competent surveyor to go upon the land occupied by the plaintiff (the defendant in the present case), and make a survey thereof, commencing at the south-east corner thereof

in the center of the highway; thence running west fifteen chains on a line of some marked trees, and on the line, which, if continued, will strike a stake and heap of stones about twenty-five links beyond; thence north on a line parallel with the aforesaid highway twenty-six chains and sixty-seven links; thence east fifteen chains to the center of the highway; thence south twenty-six chains and sixty-seven links along the center of said highway to the place of beginning. That after such survey the parties agrees that James Mann shall go on to the land and designate the line between Mr. Lafayette and Hiram Wood on the north end of the Lafayette lot, as the same existed when his father occupied the Lafayette lot, and particularly that he shall put a stake and stones, or other monument at the northern corner of the lot, so as to mark the boundary thereof. That so much of the land first described as the line so fixed by said Mann as above specified, shall cut or take off therefrom, the said Whiting agrees to pay Lafayette therefor at the rate of thirty dollars an acre." Connor and Wood both agreed that Lafayette might move the fences and place them upon the lines so fixed; and the parties further agreed with each other that the lines so ascertained by the survey and modified by Mann, as above provided, shall be and remain the boundaries of Lafayette's lot. This agreement was valid and binding upon the parties. Where there is a disputed, indefinite, or uncertain boundary line between adjoining proprietors, they may, by parol agreement, or by arbitration, fix upon a line between themselves. (*Vosburgh* v. *Teator*, 32 N. Y., 561.) By this agreement it is obvious that the west line of the defendant, dividing his land from Connor, was fixed and determined. It was the line, determinable by a correct survey, made pursuant to the agreement. There was nothing to be done by the parties thereafter that could change this line. Had the surveyor employed by Whiting made an inaccurate survey, the line run would not have been the boundary, but would have been subject to correction by an accurate survey. The line was fixed by the agreement, and although its precise location was

not known to the parties until ascertained by an accurate survey, yet the parties were bound by it, and each had title up to it under the agreement. The survey was only necessary to furnish evidence as to where it was. In respect to the north line of the forty acres, the agreement fixed as the true line the one that existed and was recognized as the line while the witness, Mann's father, owned and occupied the forty acres of the defendant. The agreement gave to each party title to that line, but they differed as to where it was. For the purpose of settling this question the agreement provided, that it should be determined by Mann, whose father had owned and occupied the forty acres for a great number of years. Had Mann determined the same pursuant to the agreement, there is no question but that the parties would have been concluded thereby upon this question of fact, and the plaintiff's right to recover for the trespass established. But the defendant's counsel offered in evidence a paper executed by the defendant, revoking his authority to determine the question. This was rejected by the court upon a general objection of the plaintiff, to which the defendant excepted. It is said in the points of the plaintiff's attorney, that the offer did not embrace proof of service upon the plaintiff, but no such objection was made upon the trial; had there been, it probably would have been obviated. It was the natural mode, first to prove the paper and then service upon the other parties. It must be assumed that the court held the power of Mann irrevocable. In this I think there was error. He was empowered under the agreement, to decide where the existing line was while the lot was occupied by his father. This was by the agreement fixed and established as the true line. The only remaining question was to determine where this line was; this the parties agreed to submit to Mann, and to abide by his decision. This was the only matter with which he had anything to do; everything else was settled by the agreement. In determining where the line was, Mann was to act as arbitrator; his power so to act was revocable by either party, as is the case in every submission to arbitrators,

if exercised at the proper time. The fact that there was a consideration for the agreement, in the settlement of the existing suit, makes no difference in this respect. Every agreement to arbitrate must, to be valid, be based upon a consideration, the amount of such consideration is not material. The agreement to submit the question to Mann was the only part revocable by either party; his power having been revoked, his subsequent determination was not binding upon the parties. The line as it existed while his father occupied the lot under the agreement was made the boundary, but its location should have been submitted to the jury upon the evidence. The plaintiff gave evidence which, unexplained or uncontradicted, entitled him to a verdict, that it was identical with the blank line claimed by him. But the defendant offered to prove that this was not the line, but that the line then existing was where the fence was at the time of the trial, which was the line claimed by the defendant, and which would give to him the strip in dispute. This evidence ought to have been received, and the question decided by the jury. The value of the land in dispute is less than twenty dollars. It is much to be regretted that so serious a litigation should originate from such a small affair; but the question must be decided the same as if affecting important rights. The judgment appealed from must be reversed, and a new trial ordered.

All concur.

Judgment reversed.