DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## December, 1894.

CHARLES KENNEDY, Appellant, *v.* JAMES FARLEY, Respondent.

*Proof of a prima facie title to real estate — arbitration — arbitrators' award — rights of one in the possession of real estate under a contract for the purchase of the same transferee of such rights — description of real estate — where the damages are agreed upon a judgment may be directed at General Term.*

The proof by the plaintiff, upon the trial of an action brought to recover damages for trespass, of a deed to him of a lot of land, where his grantor was at the time of the execution of the deed in the possession of the property conveyed, is sufficient to establish a *prima facie* title to the premises.

The submission to arbitration of the question, as to what was the true boundary line between two lots of land, and the award of the arbitrators under such submission, where both parties consent to the location of the line as established by the arbitrators, are sufficient to establish the boundary line between the two lots as to the parties to the submission, their heirs and privies.

A person in the possession of real estate, under a contract to purchase the same, has rights in the property, equitable, if not legal; and where he transfers these rights to another his transferee is bound by all obligations that his grantor has imposed upon them.

A deed of real property conveyed premises by the following description: "All that certain piece or parcel of land, etc., containing one hundred and sixty acres of land, more or less, and is the same land conveyed to the parties of the first part by William Jackson and wife by deed dated December 31st, 1878."

*Held,* that the amount of land conveyed thereby was limited by what William Jackson could and did convey in his conveyance to the party of the first part.

When, upon the trial of an action brought to recover damages for trespass, each party in the trial court requested the direction of a verdict upon the evidence, and the amount of damages was agreed upon between them, in case of a reversal of a judgment in favor of the defendant by the General Term, judgment may, in a proper case, be directed for the appellant for the amount of the damages so agreed upon, with costs.

APPEAL by the plaintiff, Charles Kennedy, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Essex on the 25th day of July, 1893, upon the dismissal of the complaint upon the merits directed by the court after a trial at the Essex Circuit before the court and a jury.

*Richard L. Hand*, for the appellant.

*Francis A. Smith*, for the respondent.

HERRICK, J.:

This is an action against the defendant for trespass in entering upon what the plaintiff alleges to be his premises and cutting timber therefrom.

The court directed a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff appeals to this court.

It appears that the plaintiff, in 1869, purchased a parcel of land known as lot No. 97 and entered into the possession thereof, his grantor, at the time of the execution of the deed, being in possession of the premises.

Adjoining the lot purchased by him was a lot in the possession of one William Jackson. A controversy having arisen between them as to the boundary line between the two lots, in 1877, by a written agreement, they referred it to arbitrators to fix the line; the arbitrators, by a written instrument under their hands and seals, fixed and determined the line between the two lots, and provided that each of said parties should build their respective share of the line fence on said line, and provided that the fence theretofore built by the plaintiff might be removed to the line established by the arbitrators. Both parties consented to the location of the line as established by the arbitrators. Their award establishes the line of division between the two lots about four rods and eleven feet north of the fence erected by the plaintiff before that time.

The plaintiff had theretofore built and maintained the east half and Jackson the west half of the line fence between them. After the line was fixed by the arbitrators, the plaintiff moved the easterly half of the fence northward to the new line; the westerly half remained in its old location. The opening thus caused by the east

erly part being removed and the westerly part remaining in its old location was closed by a short cross fence between the two. The fence remained in this position until 1881, when the defendant came into possession of the premises theretofore occupied by Jackson, and shortly thereafter moved the westerly half of the fence up to the line established by the arbitrators, thus establishing a continuous fence between the two lots upon the line established in 1877.

In the spring of 1892 the defendant moved the west half of the fence four rods or more north of the arbitrators' line, upon what the plaintiff alleges to be his property, and cut the timber therefrom, which removal of the fence and cutting of timber constitutes the trespass complained of.

The proof by the plaintiff of a deed to him of lot No. 97, his grantor being at the time of the execution of that deed in possession, I think is sufficient to establish at least a *prima facie* title to said lot. The submission to arbitration of the question as to what was the true boundary line between his lot, No. 97, and the lot occupied by Jackson, and the award of the arbitrators under such submission was sufficient to establish that boundary line at least as between himself and Jackson and Jackson's heirs and privies. ( *Vosburgh* v. *Teator,* 32 N. Y. 561; *Wood* v. *Lafayette,* 46 id. 484.)

But the defendant claims that he is not bound by the act of Jackson; that he is neither an heir of nor privy in estate to Jackson. He claims that Jackson was merely in possession of the premises under a contract to purchase, and that he derives his title, not through Jackson, but through parties who owned the fee of the land.

I have some doubts as to the legality of the evidence by which the nature of Jackson's possession was proved, but, assuming it to be properly admitted, it would appear that he was in possession of such property under a contract to purchase the same from one Mary L. C. Biddle, the owner thereof, and that at about the time of his death he owed a balance upon the purchase price of $405.

Whatever his rights may have been, he transferred them all by a quit-claim deed dated December 31, 1878, to the J. & J. Rogers Iron Company. In January, 1880, he died. On the 31st day of May, 1880, Mary L. C. Biddle executed a warranty deed to the J. & J. Rogers Iron Company of the same premises, describing them as being

the same premises contracted by her to one William Jackson, and by said Jackson deeded to the party of the second part; and the J. & J. Rogers Iron Company, by a deed dated April 13, 1887, deeded the premises to the defendant Farley.

Upon these facts the defendant claims that at that time Jackson was in possession of such premises; that Mary L. C. Biddle was the owner in fee thereof, and that she conveyed such premises to the J. & J. Rogers Iron Company, and that the J. & J. Rogers Iron Company in turn conveyed to him, and that, therefore, he is not an heir or privy of William Jackson, and that William Jackson, being merely a contractor in possession, could not enter into any agreement of arbitration that would bind the legal owner.

At first blush his position would seem to be correct, but the real facts as disclosed here do not, I think, sustain the defendant's contention.

Jackson, being in possession of the premises under a contract to purchase the same, had rights equitable, if not legal, therein. Those rights were transferred by him to the Rogers Iron Company, accompanied with all the obligations that he had imposed upon them; one of the rights that he undoubtedly possessed was to have a deed of the property upon paying the balance of the purchase price, and shortly after his death that deed appears to have been given by Mary L. C. Biddle to his grantee, the Rogers Iron Company, the consideration therein expressed being considerably less than the testimony shows was the balance due by Jackson shortly before or at the time of his death.

In that deed the contract between Mary L. C. Biddle and Jackson is expressly referred to; thus the Rogers Iron Company by these two deeds became possessed of the equitable interest of William Jackson and of the legal estate that he was to receive under his contract upon the payment of the purchase price of said premises.

I am strongly inclined to think that the Rogers Iron Company took the premises subject to all estoppels and conditions that Jackson himself was subject to, and took no more than Jackson could have conveyed had he received a deed in fee pursuant to his contract with Mary L. C. Biddle. However, this latter proposition is perhaps not necessary to be determined for the purpose of deciding this case.

As we have heretofore seen, Jackson was bound by the articles of arbitration, and, by the award of the arbitrators, all that he could convey was the lot whose boundary was established by said arbitrators.

The quit-claim deed that he gave to the Rogers Iron Company did and could convey no premises north of the boundary line described in the award. That is all the estate that the Rogers Iron Company derived from William Jackson, and that is the estate, and all the estate, that was conveyed to the defendant; whatever interest the Rogers Iron Company had in the premises, it limited its conveyance thereof by what it received from Jackson; for in the deed of the Rogers Iron Company to the defendant the premises conveyed to the defendant were described as follows : " All that certain piece or parcel of land, etc., containing one hundred and sixty acres of land, more or less, *and is the same land conveyed to the parties of the first part by William Jackson and wife,* by deed dated December 31st, 1878."

The only title that the defendant has is through this deed, and he is concluded by its terms; his chain of title goes direct to William Jackson, and the amount of land that he received and its boundaries is limited by what Jackson could and did convey in his conveyance to the Rogers Iron Company.

It follows from this that he was not entitled to move the fence and enter upon the premises in dispute, or to cut timber therefrom; and that his acts in so doing were trespasses.

Each party in the court below having requested the court to direct a verdict upon the evidence, and the damages being agreed upon at twenty dollars, the judgment is reversed and judgment directed for the plaintiff for twenty dollars, with costs and the costs of this appeal.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment reversed and judgment directed for the plaintiff for twenty dollars, with costs and disbursements of this appeal.