
KIP *vs.* E. & C. NORTON.

An *acquiescence* for a period of *five years* in a boundary line between two adjoining lots in a village or city, where there was no *express* agreement settling the line, and where the parties manifestly acted under a *mistake* as to the true location, will not bar the party, whose lot has been encroached upon, from maintaining an action of *ejectment*, although the other party has erected a valuable building extending beyond his lot to the erroneous line.

THIS was an action of *ejectment*, tried at the Erie circuit in March, 1832, before the Hon. ADDISON GARDINER, one of the circuit judges.

The parties are owners of adjoining lots in the former village, now city of Buffalo. On the 23d of July, 1827, the defendants obtained a deed from N. Prime and J. Lloyd of their lot, described in the deed as a certain piece of land known and *distinguished on a map* of the subdivision of outer lots 84 and 85 in said village, made by Orange Risden, as lot number *nine*, bounding 40 feet on the margin of *Big Buffalo Creek*, 100 feet on the *cross canal,* 40 feet on *Prime street*, and 100 feet on lot number *eight*. On the 20th August, 1827, the plaintiff obtained a deed from the same grantors of his lot, described as a certain piece of land, known and distinguished on the same map, as above, as lot number *eight*, bounding 30 feet on the margin of Big Buffalo Creek, 100 feet on lot number nine, 30 feet on Prime street, and 100 feet on lot number seven. According to *Risden's map*, the *cross canal* mentioned in the deed of the defendants is 40 feet wide, and the lots on either side of the canal, and immediately adjoining the same, are also 40 feet wide; and all that part of the *cross canal* between Big Buffalo Creek and Prime street, together with the lines of the lots parallel thereto, run at *right angles* with Prime street and the creek. In constructing the canal, a mistake occurred : where the canal intersects the westerly line of Prime street, it was constructed *according to Risden's map ;* but in cutting it from that point to the creek, instead of running at right angles with the street, it was car-

ried southerly on to lot number nine. The defendants, in the same year in which they obtained their deed, being about to erect a store house on their lot, called on the *agent* of *Prime* and *Lloyd* to point out to them the true location of lot number *nine.* The agent supposing that the canal was correctly dug where it intersected the creek, but that its course from that point bore too far north according to Risden's map, directed *the defendants to measure up the* creek, *from the junction of* the canal, the distance of 40 feet, and then to run a line at right angles with the creek and Prime street to the street, which would give them the south bounds of the lot and the line between it and number *eight;* according to which directions the defendants located their lot, and erected a store house, building up to the line between their lot and number *eight,* as thus ascertained. The plaintiff also being desirous to erect a building on his lot, also in the same season applied to the agent of Prime and Lloyd as to the location of his lot, who directed him to measure 30 feet southerly from the store house of the defendants. Soon after the defendants commenced laying the foundation of their store house, the plaintiff was on the premises, and was there frequently during the time the foundation was being built. In 1832, it was ascertained that the store house of the defendants is located souther l of the original line between lots Nos. 8 and 9, *as laid down on Risden's map,* encroaching on lot No. 8 as follows, viz. 5 feet $5\frac{2}{16}$ inches on Prime street, and 5 feet 3 inches on Big Buffalo Creek. When the defendants purchased, the cross canal was dug and finished ; and at the time when the agent of *Prime* and *Lloyd* directed the plaintiff and the defendants where to locate their lots, there were other lots south of the lots sold to the plaintiff and the defendants belonging to *Prime* and *Lloyd.* The building erected by the plaintiff encroaches upon lot number *seven* about the same distance that the building of the defendants encroaches upon lot number *eight.* The store house of the defendants cost $2500, and the land fronting on *Prime street,* extending to the creek, was proved to be worth $150 per foot. A verdict was taken for the plaintiff, subject to the opinion of this court, on the above facts.

*C. P. Kirkland,* for the plaintiff, insisted that the plaintiff having shown title to lot number *eight,* and the defendants having no pretence of claim to that lot, (the lot conveyed to them being specifically number *nine,* as designated on *Risden's map,*) the plaintiff is entitled to recover, notwithstanding the practical location. Such location was made under a mutual mistake of the parties, and acquiesced in for only between four and five years, and that without any agreement to abide by it ; and therefore it cannot be set up in bar of the plaintiff's title. To render a practical location conclusive, there must be an *express agreement* or a *long acquiescence.* An acquiescence for 18 years has been held to conclude a party, but never for a shorter period. If equitable circumstances exist in this case, the defendants must resort to a court of equity, where, if they be allowed to retain the land, it will be only upon condition of their doing equity by making a proper compensation to the plaintiff. He cited, in support of these positions, 3 Kent's Comm. 336. 1 Caines' R. 358, 3 Johns. R. 269, 7 id. 213, 8 id. 357, 9 id. 100, 17 id. 29, 6 Cowen, 719, 7 id. 761, 6 Wendell, 467, 7 id. 170, 10 id. 108.

*J. A. Spencer,* for the defendants. The grantors of the defendants being the owners of *lot number eight* at the time of the conveyance to the defendants of lot number *nine,* the latter are entitled to hold a lot forty feet wide on Big Buffalo Creek, and extending from thence to Prime street, at right angles with the creek and street, although it includes a part of lot number *eight.* The *actual location* by the agent of *Prime* and *Lloyd,* by the defendants, and by the plaintiff, is conclusive upon the parties ; and if not, the acquiescence by the plaintiff whilst the defendants were erecting their store-house, and the continuance of such acquiescence for the space of about five years, should be deemed an agreement between all the parties that the line should be considered as fixed as it had been designated by the agent of the grantors of both parties. The effect of *acquiescence* does not depend upon the length of time for which it is continued, because the lapse of *five years* in a growing city may involve all the

consequences of an acquiescence of *eighteen years*, in a line be-
tween different owners of a tract of timber land, or in a farm-
ing district. To give effect to acquiescence, it is not necessa-
ry that the possession should continue as long as would be re-
quired to establish an adverse possession. In support of these
positions, he cited 7 Johns. R. 223, 242, 245, 1 Cowen, 605,
612, 5 id. 349, 373, 6 id. 706, 7 id. 723, 16 Johns. R. 178, 8
id. 394, 7 id. 238, 7 Cowen, 761, 6 Wendell, 467, 10 id. 109.

*By the Court*, Savage, Ch. J. The only question, as it seems
to me, is whether the plaintiff has so assented to the location
of *No. 9* as to be bound by it. Such an assent must be either
expressed or implied. If there is a disputed line between two
adjoining proprietors of land, it may be settled between them
by a location made by both, or made by one and acquiesced
in by the other for so long a time as to be evidence of an
agreement to the line. There can be no doubt that an ex-
press parol agreement to settle a disputed or unsettled line is
valid if executed immediately, and possession accompanies
and follows such agreement. This was expressly adjudged
in *Jackson* v. *Dysling*, 2 Caines, 198. Not that the title to the
land passes by the parol agreement, but the party making
the agreement is not permitted to bring an action in violation
of it; the agreement does not pass the title, but fixes the lo-
cation where the estate of each is supposed to exist. So also
where there has been no express agreement, long acquies-
cence by one in the line assumed by the other is evidence of
an agreement. All the cases cited agree in these positions.
It is not pretended, in this case, that any express agreement
was entered into between the parties. Each located for him-
self, under the direction of the agent of their common *gran-
tors*, who acted under a mistake as to the true location. The
plaintiff is not bound, therefore, by an express settlement of
the line ; and the acquiescence being only four or five years,
is not sufficient evidence of an agreement to conclude him.
The plaintiff is entitled to judgment.