| 8 | 391 |
| 98a | 405 |

GOOCH vs. CONNER.

It is a well-established principle, that when a contract is reduced to writing, all anterior and contemporaneous stipulations and representations are merged in the written instrument. This rule, however, does not exclude fraudulent misrepresentations made for the purpose of inducing a party to enter into contract sought to be enforced.

APPEAL from Cooper Circuit Court.

Todd and Miller, for Appellant.

1. The clause in Conner's deed to Gooch, saving the rights of Conner as to his mill and works, is not a covenant or agreement upon which suit will lie; or by which Gooch is estopped from alleging the fraud, misrepresentation, or mistake of the grantor, in procuring such reservation.—4 Cruise's Digest, p. 11, 15, 213, sec. 56; 15 Mass. Rep., 183; 1 Starkie, 262; 2 Ibid., 557; Greenleaf's Ev., 30.

2. If the clause in the deed operates for the grantor as an agreement, it is no

*Gooch* vs. *Conner*.

more than the law imposed upon Gooch upon the erection of a dam and works upon the stream below Conner's mill.—3 Kent., 439.

3. The action being in case, gave the defendant liberty under the issue to prove these circumstances in justification, or excuse for the injury complained of.— 1 Chitty, 527.

4. The circumstances offered in proof are directly calculated to show fraud, misrepresentation, or mistake in the plaintiff, by which the defendant gave his consent to the reservation.

5. The plaintiff, by parol license, authorized the defendant to erect his dam as he did, which is a justification, and the proof offered was legal to show such license.—4 Dana, 338; 7 N. H. Rep., 237; 7 Bingham, (Com. Law,) top-paging, 287; 7 Taunton, 145, top-paging; 1 Chitty, 528.

LEONARD *and* HAYDEN, *for Appellee.*

1. The plaintiff had a right to the use of the stream as it flows through his land, without any interruption from the proprietors above or below, and is therefore entitled to recover for any injury to his machinery occasioned by the erection of the defendant's dam.—Menzies *vs.* Breadelbone, 3 Bligh, N. S., 418; Wright *vs.* Howard, 1 Sim. and Ster. 203, reported in 1 Eng. Chancery Reports, cond., 95; Mason *vs.* Hill and Others, 3 Barn. and Adolph.; 304, reported in 23 Eng. Common Law Rep., cond.; Cross *vs.* Lewis, 2 Barn. and Cress. 686, 690, reported in 9 Eng. Com. Law Rep. cond., 221; Tyler *vs.* Wilkinson, 4 Mason's Rep., 500; Gilman *vs.* Tilton, 5 N. H. Rep., 231; King *vs.* Tiffany, 9 Conn. Rep., 152; Crooker *vs.* Bragg, 10 Wendell Rep., 260; 2 Phillips' Ev. (Cowen and Hill's edition) part 1, pp. 375, 384.

2. The plaintiff's declarations to Woodward, made several years before the sale, and to Chandler a short time previous to the sale, was properly excluded.— 3 Kent's Com., 4th edition, 451, 453; Munford *vs.* Whitney, 15 Wend. Rep. 381; Greenleaf's Evidence, 315, 316; 3 Phillips' Evidence, Cowen & Hill's ed., part 2, p. 1466 – 1476, and cases there cited; 1 Greenleaf's Ev., 30; Sherwood *vs.* Salmon, 2 Day's Cases in Error; Chapman *vs.* March, 19 Johns. Rep., 289; 4 Cow. Rep., 442; Story's Equity, 207, 8, 9, 10.

3. The omission of the plaintiff to object to the erection of the defendant's dam to the height to which it was erected, was no evidence of a parol license to make such an erection as would back the water upon the plaintiff's machinery. —1 Greenleaf's Ev., 229, 230.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of trespass on the case brought by Conner against Gooch, to recover damages occasioned by the back-water from Gooch's mill-dam flooding the machinery of the plaintiff's mill. A verdict was found for the plaintiff for $970 89, upon which judgment was entered, and from this judgment defendant appealed.

*Gooch* vs. *Conner.*

Upon the trial it appeared that the plaintiff was the owner of a mill site, mills and machinery connected therewith for grinding, sawing, &c., situated on the same stream with defendant's mill site, and about four or five miles above it; that plaintiff's mills had been erected, the steps required by our statute having been taken, some fifteen or eighteen years; that the site occupied by defendant originally belonged to plaintiff, and had been, at his (the plaintiff's) instance, condemned for a dam ten feet high, and subsequently to such inquisition was sold by plaintiff to defendant, who erected a dam thereon about seven feet and a half high, the backwater from which overflowed the plaintiff's wheels.

The defendant offered, in his defence, to prove by a witness, that he, the defendant, came from Ohio to the house of witness, in Cooper county, in 1838; that whilst there plaintiff inquired of witness whether defendant had yet purchased a mill site, and being informed that he had not, requested witness to tell defendant that he, plaintiff, would sell him one at Big Lick for $2500; that he, plaintiff, had had the site condemned for a dam ten feet high, but that he did not think he could warrant one more than eight and a half or nine feet high, from the apron; that this conversation was repeated by the witness to defendant, who thereupon, in company with witness, went to the house of plaintiff, and contracted for the purchase of said site, it being the same site upon which defendant's dam is erected. This testimony was rejected by the court.

The defendant read the deed from plaintiff to defendant, conveying the tract of land embracing the said site, which was a deed poll, and contained the following clause:—"It is, however, distinctly understood, in conveying the said land, that the said Conner conveys no right to the said Gooch by virtue of his having a mill site condemned on the premises, to erect a mill dam that will injure said Conner's mill by backing the water on him."

The defendant offered to read the petition of plaintiff to the Cooper Circuit Court, praying for a writ of *ad quod damnum*, and for leave to erect a dam ten feet high at the Big Lick, (being the site conveyed to defendant,) with the proceedings and final order of the court thereon, but the same were excluded by the court.

The defendant also offered the deposition of Joel E. Woodward, the sheriff of Cooper county, when the writ of *ad quod damnum* was executed, to prove that plaintiff declared to witness, at that time, that he (plaintiff) had levelled the creek from Big Lick to his own dam, and that a ten-foot dam would not injure his mill, though he only desired an eight-foot dam, and that plaintiff requested witness to state this to the jury. This testimony was also rejected.

The defendant also offered to prove by witnesses, that in July, 1840, after the deed executed by plaintiff to defendant, the plaintiff stated that he had always been under the impression that a mill dam eight or eight and a half feet high could be erected upon the land he sold defendant, without obstructing the plaintiff's mill dam; but that since defendant had erected his dam, he found he was mistaken.

The defendant also offered to prove that at the time his dam was being built, the plaintiff was present and knew of defendant's intention to erect it at the height it was, before suit brought, and made no objections.

To all of which testimony plaintiff objected, and the court excluded it.

There was testimony on both sides in relation to the extent of the damages, about which there is no controversy here.

The court instructed the jury, that if the backwater from the defendant's dam injured the machinery of the plaintiff's mill, the plaintiff was entitled to damages equal to the actual loss sustained; and that the fact that plaintiff sold to defendant the site upon which defendant's dam was erected, gave the defendant no right to build his dam so high as to flow the water back upon plaintiff's mill.

The only question presented by the record is, whether the testimony offered by the defendant on the trial was properly excluded.

This was an action on the case, in which, under the instructions of the court, the plaintiff recovered damages to the amount of the injury he sustained.

As no vindictive damages were claimed or awarded, if the plaintiff was entitled to recover at all, he was entitled to such damages as were given, and evidence in mitigation of damages was inadmissible. The only ground, then, upon which the excluded testimony could be permitted, must be that it would, if credited, conduce to establish a legal defence or complete bar to the action. Does the evidence offered by defendant amount to such a defence?

The testimony rejected consists both of declarations made by the plaintiff previous to the sale and deed to defendant, and declarations and acts of defendant subsequent to the conveyance.

This deed, being executed only by the plaintiff, did not constitute what in law is termed an *estoppel;* but being accepted by the defendant, is undoubtedly the evidence and only legal evidence of the contract of sale. The general principle is well established, that where a contract is made, all anterior and cotemporaneous stipulations and representations are merged in the written instrument. This rule has, however, not been understood to exclude fraudulent misrepresentations, introduced by a party desiring to avoid the contract, or seeking redress for injuries sustained in consequence of such misrepresentations; nor is there any rule of evidence which would prevent a defendant from availing himself of such fraudulent misrepresentations where the contract induced by the malpractices of the plaintiff is sought to be enforced.

It is not a question here, however, whether the defendant could maintain an action for a deceit practised in the sale of this land, or whether, in the present action, disconnected as it is with this contract, the defendant could avail himself of fraudulent misrepresentations of the plaintiff, inducing him to accept a conveyance with certain stipulations, to show that the injury sustained by the plaintiff was brought about by his own misconduct. There is no pretence of any fraud here; the defendant does not offer to prove any fraudulent misrepresentations. To what purpose, then, shall the conversations between plaintiff and defendant's agent, previous to the sale, be admitted?

They are inadmissible for the purpose of explaining, varying, or annulling the deed. If they amounted to a license, the deed was a revocation of the license.

It may be said, that the evidence offered by the defendant should have gone to

the jury, and that it was their province to determine whether it amounted to fraud or not.

Fraud is undoubtedly a question of intent, to be determined by the jury from all the facts in evidence before them. But where testimony is inadmissible upon general principles, and that testimony is sought to be introduced for a special purpose, for which special purpose it is alone admissible, that object must be avowed. A court would not presume that fraud is attempted to be proved, where it is not charged.

If the representations made by the plaintiff in relation to the height of the dam were occasioned by an innocent mistake, in a matter about which he had no peculiar or exclusive means of judging, such representations must be considered as merged in the written contract, and were properly excluded.

In relation to the declarations and acts of the plaintiff subsequent to his deed to defendant, we are of opinion that they were properly excluded. We cannot see any legitimate purpose to which they could be applied. The fact that plaintiff stood by and made no objections, during the progress of defendant's building, could amount to nothing, it being evident that until the dam was closed, he was, or might have been, ignorant of the effect it would have upon his own works. The evidence offered could not mitigate the damages, for no vindictive damages were given or sought, and it was no bar to the action as a parol license, or tending to establish a parol license.

Judgment affirmed.