IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

### FEBRUARY TERM, 1871, AT ST. JOSEPH.

———————◆◆———————

### John H. H. Kincaid, Respondent, v. Edward Dormey, Appellant.

1. *Lands and land titles—Boundaries—Verbal agreement—Subsequent description in deed given by mistake.*—A verbal agreement, accompanied by possession and improvement, permanently locating a division line, is founded upon a good consideration, is not contrary to the statute of frauds, and will bind the parties and their privies. And one holding under a party to such an agreement may invoke it, although his deed of purchase by mistake prescribed a different line. The agreement would not be merged in or overruled by the deed.

2. *Lands and land titles — Division fence — Land occupied by mistake not held adversely, when.*—One holding by mistake up to a division fence and over the true line, without intending to own anything more than what is embraced in the true line, does not hold the space intermediate between that line and the division fence adversely to the rightful owner.

3. *Lands and land titles — Surveyor — Plats and field-notes — Magnetic variation — New and old lines.*—When a surveyor makes and describes a new line by courses and distances, his plats and field-notes must show the magnetic variation from the meridian; but in establishing old quarter-section corners (Wagn. Stat. 1312, § 31), or in establishing center corners upon the open lines (*id.* 1310, § 24), the surveyor need not ascertain the magnetic variation.

22—VOL. XLVII.

*Appeal from Livingston Court of Common Pleas.*

The evidence in this case showed that the appellant was the owner of 120 acres of land off the north side of the northwest quarter of section 1, in township 56, range 24, in Livingston county, Mo., and the respondent is the owner of the remainder of said quarter-section. The quarter-section was entered from the United States in the year 1857 by one Samuel Farris, under an agreement (as contended by appellant) with respondent that it should be divided between them in the proportions stated. Before the purchase by Farris he entered upon and took possession of the north 120 acres of the said quarter-section, and the respondent took possession of the remainder in 1857, immediately after the entry by Farris. The same year, or the following one, Peck ran a dividing line between said Farris and the respondent's land, cutting off 120 acres on the north, and said parties occupied and possessed accordingly. Afterward, in the latter part of 1859 or early part of 1860, the said parties procured one Garvin, a surveyor, to re-run said line between said parties, which line was located by said Garvin at about the same place as that previously run by Peck. This line run by Garvin was used and recognized by said parties as the boundary between their lands from the time it was run until said Farris sold and conveyed his 120 acres to the appellant in 1868, by possessing and occupying up to it on their respective sides, and by each party building one-half of a partition fence on said line.

See further the opinion of the court.

*James McFerran*, for appellant.

*Wait, Broaddus & Pollard*, for respondent.

BLISS, Judge, delivered the opinion of the court.

The parties are adjacent owners of land embraced in the northwest quarter of section 1, etc., the defendant owning the north 120 acres, and the plaintiff the balance. The plaintiff brings his action for some ten acres alleged to be inclosed and occupied

by the defendant over and above his 120 acres, and the controversy is in relation to the true division line. Defendant appeals from the judgment against him, and first objects to the action of the court in admitting in evidence the record of a survey made by the county surveyor, in which he established the destroyed quarter-section corners of said section 1, and run off the defendant's land. The only colorable ground of objection was the omission by the surveyor to note upon the plat and field-notes " the magnetic variation which the lines of the survey were run," as required by section 13, chapter 27, Gen. Stat. 1865 (Wagn. Stat. 1309). The language of the statute requiring such variation to be noted is general, and must apply to the record offered in evidence, unless from its object and the nature of the record it is inapplicable. The survey shows that the surveyor established the destroyed quarter-section corners on the north and south lines of the section, as well as the corner in the center of the section, and established monuments; also that he established the southeast and southwest corners of the 120 acres equi-distant from the north line of the section. In this the surveyor gives no courses whatever, nor was it necessary to do so. His only legitimate object was to find the old corners and to lay off the amount of land called for by defendant's deed. In re-establishing the old quarter-section corners, according to section 31 of the statute, or in establishing the center corner upon the open lines, according to section 24, it does not concern the surveyor to know the true meridian or the variation of the needle. He runs no new lines; he describes no new courses; nor is it required that he give the courses contained in the map and field-notes of the original United States survey. Hence there can be no conceivable object in noting the magnetic variation at the time. Where he makes and describes a new line by courses and distances, it may become very important in after-years, in order, in the loss of monuments, to ascertain its true location, to know the magnetic condition of the needle at the time, and its relation to his line. Hence he is required, in such cases, to say how the line was run — whether by the true meridian or by the needle; and if by the latter, how much it varied from the true meridian. But the requirement has

no relevancy to a record like the one under consideration, and, if followed, would be but an idle ceremony.

The instructions given and refused are voluminous, and I have read them carefully to find the theory upon which the case was submitted and passed upon by the jury. I find, first, that the court gave the correct doctrine upon the question of adverse possession in holding by mistake up to a division fence and over the true line, without claiming to own anything more than what is embraced within the true line. The law upon that subject has been so repeatedly declared by this court as to require no further comment. (See St. Louis University v. McCune, 28 Mo. 485; Knowlton v. Smith, 36 Mo. 507; Thomas v. Bobb, 45 Mo. 384.) But upon another and material question its views were clearly erroneous. The present defendant purchased of one Farris, and claims that before his purchase, and when the premises were owned and occupied by said Farris, an agreement was made and entered into between him and the plaintiff, adjusting their division line. From the instructions asked by defendant, which were refused, and from evidence ruled out, I understand the court to have held that whatever this agreement may have been, the defendant can not take advantage of it; that, inasmuch as the deed from Farris to him calls for 120 acres only, any agreement theretofore made in regard to the boundary line of said quantity of land, is merged in or is overruled by the deed, and is rendered of no effect. I can not understand the ground upon which this holding was based. If the owners of contiguous lands are unable to adjust and fix the line that divides them by a valid agreement that shall bind their privies, then the line is not adjusted and fixed. It is set afloat by a conveyance or by the death of either party, and amounts to nothing more than a revocable license. But such is not the law in relation to agreements of this character. Whenever they are treated as obligatory upon the parties to them, they are also obligatory upon those who claim under them, for when the boundary is fixed the estate passes as located to whoever is entitled to receive it.

The case of Gooch v. Conner, 8 Mo. 391, referred to by counsel, does not bear upon the question, but only announces

the familiar principle that when a contract is reduced to writing, anterior stipulations are merged in the written instrument, and a license will be held to be revoked by a deed inconsistent with it.

That a verbal agreement accompanied by possession and improvement, permanently locating a division line, is founded upon a good consideration, is not contrary to the statute of frauds, and will bind the parties and their privies, is the settled law of the country, and has been frequently recognized by this court. (Taylor v. Zepp, 14 Mo. 488; Blair v. Smith, 16 Mo. 273, and the cases before cited.) But such agreement must be distingushed from cases where parties fix upon a line of separation, supposing it to be the true line, without any intention of recognizing any other than the true line, or where they fix upon it as a temporary expedient until the true line can be ascertained.

We are asked, in view of the assumed preponderance of evidence against the existence of the alleged contract pertaining to the division line, to affirm the judgment, even if we should find an error of law upon the record. This we can not do without denying to defendant the right of trial by jury. The court having admitted evidence tending to prove a contract between Farris and the plaintiff, afterward erroneously ruled it out, and refused to give the defendant, as Farris' grantee, the benefit of any such contract. We do not know whether the jury would have found its existence or not. If the jury had found an agreement locating a doubtful division line, and that plaintiff and Farris, and afterward the plaintiff and defendant, for a series of years, had occupied up to it and treated it as the permanent boundary of their several possessions, without reference to the true line, then the defendant would have been entitled to a verdict; and the court erred in not permitting him to avail himself of the alleged contract. The judgment will therefore be reversed and the cause remanded. The other judges concur.