JAMES M. WATROUS, APPELLANT, VS. WILLIAM A. MORRISON, APPELLEE.

| 33 | 261 |
| 33 | 531 |
| 33 | 261 |
| 38 | 268 |
| 39 | 472 |
| 39 | 571 |
| 39 | 731 |
| 33 | 261 |
| 52 | 72 |

1. In the sale of land in sections or subdivisions thereof, including lots, according to the government survey, the survey as actually made controls. It is the survey as it was actually run on the ground that governs, if the monuments, corners or lines actually established can be located or proved. Courses and distances yield to such corners or lines so long as the latter can be located, and for the reason that the latter are the fact or truth of the survey as it was actually made, while the former are but the description of the act done, and when inaccurate they can not change the fact.

2. While it is true that the title to real estate can not be transferred by verbal agreement, yet where the boundary between contiguous lands is uncertain or disputed, the owners of such lands may agree upon a certain line as the permanent boundary line, and where the agreement is followed by actual occupation according to such line as the boundary, the line will be binding upon them and their successors in title as the boundary. The line becomes binding for the reason that the proprietors have by such consent and conduct agreed permanently upon the limits or extent of their respective lands or property.

3. In cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period of seven years, is the intention of the party holding beyond the true line. If such occupation is by mere mistake and with no intention upon the part of the occupant to claim, as his own, land which does not belong to him, but he intends to claim only to the true line wherever it may be, the holding is not adverse. If, however, the occupant takes possession believing the land to be his own up to the mistaken line and claiming title to it, and so holds, the holding is adverse. The intent to claim title up to the line is an indispensable element of adverse holding; the claim of right must be as broad as the possession. Simple acquiescence. or lying by without objection, for the statutory period, in case of such adverse holding, will bind the party so lying by to the line, though not the true line.

4. It is improper to ask a party to an action of ejectment, testifying in his own behalf, if he had been in actual, open and notorious

possession of the *locus in quo*. The question calls merely for the opinion of the witness on an issue which it is the province of the jury to settle, subject to any proper instructions from the court as to the law of the case.

5. When an improper question is excluded by the trial judge, any inaccuracy in the objection on which it was excluded imparts no merit to the question, nor any error to the ruling.

6. The exclusion on an erroneous ground of a question asked a witness becomes entirely immaterial when the bill of exceptions shows that he has, without objection, and both before and subsequent to such exclusion, testified fully as to the point covered by the question.

7. It is not error to exclude a question put to a party to an ejectment suit testifying in his own behalf, to the effect whether or not he had ever admitted to the plaintiff or to any one else that the land in dispute did not belong to him. Whatever in the nature of such an admission may have passed between the defendant and plaintiff, or the former and any one else, was admissible to be proved by either party in the proper way, and whatever may have been testified to by the plaintiff or any other witness as having so passed could have been denied by the defendant, or explained by him according to his recollection of what, if anything, had passed; which course, the record shows, was pursued by the parties.

8. In an action of ejectment the defendant had testified that the plaintiff purchased the lot claimed by the latter, from Mrs. T., and that he, the witness, knew her husband, and was then asked if he had ever had a conversation with the husband in reference to the boundary line between plaintiff's and defendant's lots, and on objection being made by the plaintiff on the ground that Mrs. T. could not be bound by a conversation between her husband and another, the court excluded the question: *Held*, error, as the conversation may have tended to show an intention upon the part of defendant to claim as his own the land, up to the line to which he held, exclusive of any other right, and independent of such line being the true line.

9. A party to an action of ejectment may in testifying simply answer whether or not he has any knowledge that any objection was made by a deceased predecessor in title of the opposite party to a stated line as the boundary line between adjoining lots. Whether, or not, or under what circumstances, he can do more, not presented for decision.

10. The expression, "under claim of title, exclusive of all other rights," used in a charge in an action of ejectment, is tantamount to that of "under claim of title, exclusive of any other right," to be found in §§ 1290 and 1291, Rev. Stats.

11. The expression: "The plaintiff having first established his title by sufficient record evidence," used in a charge to the jury: *Held*, in view of the connection in which it appeared, not to have been intended by the judge to declare that the plaintiff had as a matter of fact so established his title; but that the judge's purpose and meaning were that the *onus* of proving adverse possession as a defense would not arise until the plaintiff had established his title in the manner mentioned. The expression being calculated under some circumstances to mislead, is not commended.

12. Where two parties to an action of ejectment had become the owners in fee of adjoining lots of land, and when they came into possession there had not been established a true boundary between them, and there had not been such an adverse holding by the defendant as was necessary to perfect his right under the statute, and they then agree to have the true boundary established by a survey and to abide by such survey, it may be inferred by the jury that the defendant's claim or holding was only intended to be to the true line, wherever it might be, when legally established by proper methods.

13. The term "notorious," sometimes used in defining adverse possession, means that the possession or character of the holding must in its nature possess such elements of notoriety that the owner may be presumed to have notice of it and of its extent. To charge a jury that the adverse holding must be asserted at all times and in all places wherever necessary to make such claim known and understood, is at least calculated to mislead a jury by leaving it to them to decide at what times and places it is necessary to make such claim generally known and understood, and is improper.

14. A non-consenting owner will not be bound by the agreement of other owners as to a boundary line between coterminous tracts of land, nor will any stranger thereto who may claim under such non-consenting owner; however, should a consenting owner afterwards become the sole owner of the entire tract in which he was interested, or of a distinct part thereof, and continue to recognize the boundary line previously agreed to and

acted upon by him and the owner of the adjoining tract, such line would be binding on him to the extent of his several ownership.

15. It is not necessary that an agreement to settle an uncertain or disputed boundary shall be made after the line has been fixed. Parties may agree orally to have an uncertain or disputed line run, and that it shall be the controlling line, and if they afterwards treat it as the permanent dividing line by improving up to it, or otherwise, they will be confined to that line.

16. An intimation by the trial judge, in charging the jury, that the conversations of the defendant as to his possession being adverse have not been consistent, is improper.

17. A mere agreement between owners of contiguous lands to employ a common agent or surveyor to run a line and set up boundaries between two adjoining properties, where the dividing line is susceptible of being correctly located, will not estop either party, or the grantees of either, from showing an error in such line.

18. A possession by one coterminous owner may have been taken purely by mistake, but may have been held afterwards adversely to any right of the adjoining proprietor, or any other person, intentionally, avowedly, openly and continuously. Where at the time of a conveyance the holding or possession was by mistake and without intention to claim independently of the correctness or error of the line held up to, the conveyance will not be void, and for the reason that the holding is not adverse. Where the holding is with the intention to claim the land adversely, independent of the correctness or error of the boundary line, and the claim of title and the possession are of a character to render the possession adverse to the true title, within the meaning of the statute of limitations (§§1290, 1291, Rev. Stats.), a conveyance by the disseisee would be void as against the disseisor as to such of the land as was so occupied at the time of the conveyance.

19. Where the refusal of the trial judge to give instructions requested is assigned as error, the statement in a motion for a new trial, as embodied in the bill of exceptions, to the effect that the court erred in refusing to give such instructions, is not proper evidence that they were duly presented to the judge on the trial, and such instructions can not be considered by the appellate court.

Appeal from the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*J. B. Wall* for Appellant.

*H. C. Macfarlane* and *Sparkman & Sparkman* for Appellee.

RANEY, C. J. :

This is an action of ejectment instituted June 22nd, 1885, (Rev. Stats., sec. 1282) by Morrison against Watrous, and in which the controversy is as to the boundary line between Lots 1 and 2, T. 29, R. 18, S. and E., such lots being in Hillsborough county and riparian to Hillsborough bay, now frequently, if not usually, called Tampa bay.

Morrison deraigns title to Lot one from the Trustees of the Internal Improvement Fund of Florida, who conveyed it in April, 1875, to Mrs. Sarah C. Taylor, she being the wife of John M. Taylor. Afterwards, on March 14th, 1876, Mrs. Taylor and her husband conveyed an undivided interest therein to James E. Lipscomb, who, according to the testimony of Mr. Taylor, was interested originally to this extent in the purchase from such trustees; and subsequently Mrs. Taylor and Mr. Lipscomb made partition of the lot between themselves, she taking the southern portion, containing thirty-three acres, more or less, and he the remainder or northern portion of the lot; such northern portion having a western boundary of thirteen chains, and containing forty acres, more or less; the deed to her bearing date June 18th, 1877, and that to him the 22nd day of the same month. On April 16th, 1878, Lipscomb

and wife conveyed the former's portion to Morri-
son, and on the 10th day of October following,
Taylor and wife conveyed Mrs. Taylor's portion to
him.

Watrous deraigns title to Lot 2 from the United
States in this wise: Harriet C. Chase conveyed by
deed dated December 5th, 1875, with covenants of
general warranty, to Spranger and Lang, and they on
March 1st, 1876, conveyed to Watrous by deed con-
taining similar covenants; and on July 13th, 1885, a
patent to Harriet C. Chase, widow of Samuel C.
Chase, for the land was issued by the United States, it.
reciting that she had paid for the land under the act
of Congress of April 24th, 1820.

The *locus in quo* which Morrison sues to recover is a.
piece of land seeming to be nearly rectangular in
shape, and containing 4.97 acres. According to Mor-
rison's contention, it is a part of Lot 1, lying in the ex-
treme western part thereof and extending the whole
length of the lot, north and south, he relying on a sur-
vey made by C. E. Worth in July, 1884. According
to the position taken by Watrous, the land contended
for is in the extreme eastern part of Lot 2, extending
the whole length thereof, north and south, he relying
more particularly on a survey made by W. F. White
in the year 1876. Watrous claims to have been in ad-
verse possession up to the White line since 1878; Mor-
rison, on the contrary, contending that whatever pos-
session Watrous had was not adverse to Morrison or to
the title under which he claims. The verdict was for
the plaintiff, but without mesne profits. Watrous has
appealed from the judgment.

In the sale of lands in sections, or subdivisions
thereof, including lots, according to the government
survey, the survey as actually made controls. Miller

vs. White, 23 Fla., 301, 2 South. Rep., 614; Liddon vs. Hodnett, 22 Fla., 442. It is the survey as it was actually run on the ground that governs, if the monuments, corners or lines actually established can be located or proved. Courses and distances yield to such corners and lines, so long as the latter can be located, and for the reason that the latter are the fact or truth of the survey as it was actually made while the former are but descriptions of the act done, and when inacurate they can not change the fact. McClintock vs. Rogers, 11 Ill., 279; Yates vs. Shaw, 24 Ill., 367; Bauer vs. Gottmanhausen, 65 Ill., 499; Kincaid vs. Dormey, 47 Mo., 337; Majors' Heirs vs. Rice, 57 Mo., 384; Willis vs. Swartz, 28 Penn. St., 413; Riley vs. Griffin, 16 Ga., 141.

While it is true that the title to real estate can not be transferred by verbal agreement, yet where the boundary between contiguous lands is uncertain and disputed, the owners of such lands may agree upon a certain line as the permanent boundary line, and where the agreement is followed by actual occupation according to such line as the boundary, the line will be binding upon them, and their successors in title, as the boundary. The line becomes binding not upon the principle that the title to real estate can be passed by parol, but for the reason that the proprietors have by such consent and conduct agreed permanently upon the limits or the extent of their respective lands or property. Crowell vs. Maughs, 2 Gilman, 419; Yates vs. Shaw, 24 Ill., 367; Cutler vs. Callison, 72 Ill., 113; Kerr vs. Hitt, 75 Ill., 51; Kincaid vs. Dormey, 47 Mo., 337: Majors' Heirs vs. Rice, 57 Mo., 384; Turner vs. Baker, 64 Mo., 218; Jackson vs. McConnell, 19 Wend., 175; Acton vs. Dooley, 74 Mo., 63; Jackson vs. Van Corlaer, 11 Johnson, 123; Rockwell vs. Adams, 7

Cowen, 761; Kip vs. Morton, 12 Wend., 127; Vosburgh vs. Teator, 32 N. Y., 561; Brown vs. Caldwell, 10 Serg. & R., 114; Kellum vs. Smith, 65 Penn. St., 86; Burrell vs. Burrell, 11 Mass., 294; Hoxey vs. Clay, 20 Texas, 582; Clark vs. Hulsey, 54 Ga., 608; Riley vs. Griffin, 16 Ga., 141; Sawyer vs. Fellows, 6 N. H., 107; Orr vs. Hadley, 36 N. H., 575; Houston vs. Mathews, 1 Yerger, 115; Jamison vs. Petit, 6 Bush, 669; Jordan vs. Deaton, 23 Ark., 704; Boyd's Lessee vs. Graves, 4 Wheaton, 513.

In Yates vs. Shaw, *supra*, it is said: In all matters of uncertainty and dispute the parties may without doubt compromise and end the dispute, and they may as certainly fix by agreement the boundary lines separating their lands as other disputes. And when they have thus agreed upon the position of such boundary and have acted upon it as the true line they should be estopped from asserting another and different line. Slight acts which may be construed into such an agreement should not, however, be held to conclude the parties. To have that effect they should be clear and satisfactory, and not doubtful and equivocal in their character. When the agreement of the parties to adopt a particular boundary is shown and possession is taken and held according to such agreement, the parties are estopped to dispute that as the true boundary, and when the fact is satisfactorily established it is sufficient. And while it may be true that it does not alter or change the original location of such line, still it must be regarded as the true line and the parties concluded from disputing it. If it was proved that the McFadden line was by agreement adopted and acted upon as the boundary, and that the parties, in pursuance of that agreement, erected fences or hedges on that line, and took possession in conformity to it,

they are now concluded from denying that it was properly and truly located. In Cutler vs. Callison, decided in 1874, where the parties agreed in 1868 upon the line where an old fence stood, as the true line, and agreed to set out a hedge upon it, and one of the parties furnished the plants and the other set them out, and there was also evidence of the admission made three years before the trial in the lower court by the recusant party of the agreement, but he claimed there was a further understanding that if the hedge did not turn out to be on the true line they were to sell and buy, as the case might be, to come to the hedge, it was said that the courts always look with favor upon the adjustment of controverted matters of this character by agreement of the parties in interest, and when an agreement to establish a boundary line is fairly and clearly made, and possession held according to the line so agreed on, no reason is preceived why such an agreement should not be conclusive.

In Clark vs. Hulsey it was held that if parties or those under whom they claim agreed upon a certain line between their tracts, and the plaintiff acted upon that agreement and built his fence there, with the knowledge and consent of the defendant, he will not be allowed afterwards to repudiate that agreement and claim a different line, whatever may have been his legal rights independent thereof.

The authorities do not fix upon any particular length of possession under the agreement as essential. In Hoxey vs. Clay the period intervening between the agreement and occupation and the commencement of the action in hostility to the agreed line was very short, the agreement being in the summer of 1854, and the action having been commenced in September of the same year, while in another case the practical recogni-

tion of the line had continued as long as thirty years. It is expressly decided, and, in the nature of things, must be, that occupation for the period required by the statute of limitations to bar a recovery upon the true title, is not necessary. Smith vs. Hamilton, 20 Mich., 433. Many other cases are conclusive of the correctness of this view. It is sufficient if the conduct of the parties show a settled recognition of the line covered by the agreement as the permanent boundary between their lands.

Where the owners are not uncertain as to the true boundary, the statute of frauds applies, and the doctrine announced above is inapplicable. Nichol vs. Lyle, 4 Yerger, 456; Jackson vs. Douglas, 8 Johnson, 367; Vosburg vs. Teator, *supra;* Terry vs. Chandler, 16 N. Y., 354. Still it seems, though we do not say it is applicable here, that the acquiescence in an actual location of a line may be of such a nature and of such continuation as to be evidence of an express agreement. Rockwell vs. Adams, 7 Cowen, 761; Kip vs. Norton, 12 Wend., 127; Jordan vs. Deaton, *supra;* Jackson vs. McConnell, 19 Wend., 175.

Another principle coming within the discussion of this case is, that in cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period of seven years, is the intention of the person holding beyond the true line. If such occupation is by mere mistake, and with no intention upon the part of the occupant to claim, as his own, land which does not really belong to him, but he intends to claim only to the true line, wherever it may be, the holding is not adverse. If, however, the occupant takes possession, believing the land to be his own up to the mistaken line, and claiming title to it, and so holds, the holding

is adverse.   The intent to claim title up to the line is an indispensable element of adverse holding; the claim of right must be as broad as the possession.   Simple acquiescence, or lying by without objection, for the statutory period, in case of such adverse holding, will bind the party so lying by to the line, though not the true line.   Liddon vs. Hodnett, 22 Fla., 442.

The basis of the first assignment of error is as follows:  The defendant when testifying in his own behalf was asked if he had been in actual, open and notorious possession of the disputed piece of land since the White survey was made, and the plaintiff objected on the ground that it was purely a question of law.   That the question was altogether improper, and the action of the [judge, which resulted in not permitting it to be answered, right, is clear.   The question called for the mere opinion of the defendant on a material issue of fact, presented by the pleadings and evidence; which issue it was the province of the jury to settle, subject to any proper instructions from the court as to the law.   The inaccuracy of the objection did not impart any merit to the question or any error to the ruling.

The second assignment is founded upon the court's having excluded a question propounded to defendant in his own behalf, to the effect, whether or not he was claiming the disputed piece of property as his own property at the time Mr. Morrison purchased Lot 1. Plaintiff's objection was that the witness was "left to make a specification on his own account."   We fail to see the merit of the objection.   The particular purpose of the question, in view of the testimony the defendant had given as to his possession, was to bring out more fully the fact that he was not only claiming the property as his own, and not as subject to Morri-

son, but was doing so at the time Morrison purchased Lot 1. As against the objection made the question was not improper. However, it is proper to say that we deem this an immaterial error, in view of the fact that his testimony, given both before and after this ruling, and without objection, shows, as far as any answer to this question could show, that Watrous was claiming the property as his own at the time stated. Had the objection been that the question was leading, it would have been well made. If there was error in the ruling it is clearly immaterial, as it would be also for the reason, if we could consider a pencil note, in the bill of exceptions, to the effect that the plaintiff withdrew all further objection to questions as to the intention of the defendant.

The defendant was also asked in his own behalf if he had ever admitted to Mr. Morrison or to any one else that the land did not belong to defendant, and the objection that the question was leading was sustained. Whether or not the defendant had ever admitted to any one that the land did not belong to him, was not a question for his decision, and there was no error in rejecting the question, whether it be leading or not. Whatever in the nature of such an admission that may have passed between the defendant and the plaintiff, or the former and any one else, was admissible to be proved by either party in the proper way, and whatever may have been testified to by the plaintiff, or any other witness, as having so passed, could have been denied by the defendant or explained by him by a statement of his recollection of what, if anything, had passed, but his opinion of whether or not it constituted an admission was properly excluded from the jury; and the fact is that the bill of exceptions shows that this course was pursued by all parties to the fullest

extent; and consequently had the question been al-- lowed we are very much disposed to think that a neg-- ative answer would be deemed immaterial to the plain-- tiff were he appellant here and assigning it, as error· without injury.

The defendant had testified that Morrison purchased. Lot 1 from Mrs. Taylor, and that he knew her hus- band, John M. Taylor; and was then asked if he ever· had a conversation with the latter in reference to the· boundary line between these lots. To this question plaintiff objected on the ground that Mrs. Taylor-- could not be bound by any conversation between her husband and any other person, and the judge sustain-- ed the objection. This ruling was erroneous. It may· have been that the conversation would have tended to· show an intention upon the part of Watrous to claim the land up to the White line as his own, exclusive of, any other right, and independent of the fact of it be-- ing the true line; or, in other words, to establish an, adverse possession against Morrison and his predeces- sors in title. Liddon vs. Hodnett, 22 Fla., 442. It· was not material that the conversation should be bind- ing on Mrs. Taylor, or that there should have been any conversation or agreement with her, to give to Wat-- rous' possession a character adverse to any rights of even Mrs. Taylor.

The next or fifth assignment·of error is based upon· the exclusion of the following question propounded to· defendant: "Mr. Watrous, please state whether or not, after the location of the line by Captain White, the owners or any of the owners of Lot 1 ever made any objection, so far as your knowledge goes, to that line as the boundary line between the two lots?" The objections to this question were, that James E. Lips--

-comb, who was an owner of the land, was dead when the question was propounded, and that Mrs. Taylor was a married lady. In so far as the objection is founded upon Mrs. Taylor's marriage state, it is disposed of by what is said under the next preceding assignment of error. The absence of any objection upon her part may or may not, according to circumstances, have been evidence tending to show acquiescence as to that line. The defendant was competent to testify simply that he had no knowledge of any such objection by Mr. Lipscomb, who had been an owner, and was covered by the question, although he was dead at the time it was asked. Whether or not, in the absence of testimony by Morrison, Watrous could have testified as to the substance or effect of any conversation or other communication which might have taken place between him and Lipscomb, is another question and not presented for decision. Of course, in the absence of evidence that there was such objection by such owners, there was no presumption that any had been made, and the immateriality of the error of the ruling as to this part of the question is consequently apparent; and as Mrs. Taylor is not shown to have ever had any knowledge or information as to the line, the same is true of the other branch of the inquiry.

The sixth assignment, based upon the exclusion of the question whether Mr. Lipscomb, to defendant's knowledge, after the location of the White line and prior to his sale to Mr. Morrison, made any objection to that line as the dividing line between the lots, is disposed of by what is said under the fifth assignment as to the second ground of the objection to the question discussed there.

The seventh assignment relates to an instruction given by the trial judge to the jury. The judge charged: "In actions of this character the plaintiff must rely for recovery upon the strength of his own title, and can not avail himself of any weakness in the title of the defendant. But when plaintiff shows legal title to the premises in himself, then the law presumes that he was possessed of the same within the time prescribed, and the occupation of the premises by any other person will be deemed and held to be under and in subordination to the legal title until the contrary is shown by competent testimony. And persons claiming adversely must show an actual continued possession or occupation of the premises, under a claim of title exclusive of all other rights for a period of seven years, in order to defeat this action." The last sentence was excepted to in the motion for a new trial, and the exception was overruled.

It may be well to say in this connection that by Section 1290 of the Revised Statutes it is provided that whenever it shall appear that the occupant *     * entered into possession of the premises "under claim of title exclusive of any other right," founding such claim upon a written instrument as being a conveyance of the premises in question,     *     * and that there has been a continued occupation and possession of the premises included in such instrument,     *     * the premises so included shall be deemed to have been held adversely; with an exception. And the next section provides that where it shall appear that there has been an actual continued occupation for seven years of premises "under a claim of title exclusive of any other right," but not founded on a written instrument, or a judgment, or a decree, the premises so actually occupied, and no other, shall be deemed to have been held

adversely. It seems to us that the expression "under claim of title exclusive of all other rights," used in the charge is no broader and only tantamount to that "under claim of title exclusive of any other right," used in the statute, and is distinguishable from the expression used in the latter part of the last charge discussed in the case of Liddon vs. Hodnett, *supra*.

It is said, in support of the objection, that the instruction "would be correct if the only defense set up under the adverse claim was the statute of limitations, but where, as in this case, the defendant claims, by reason of his adverse holding, that the plaintiff's deed conveyed no title as against him, the instruction is misleading and clearly erroneous." A proper and sufficient answer to this is, as is apparent, that the judge was not charging upon the question of the effect of an adverse possession of land by one person upon a conveyance thereof made by another not in possession.

The eighth assignment is that the court erred in instructing the jury as follows: "The plaintiff having first established his title by sufficient record evidence." The motion for a new trial, in which, we may remark, all exceptions to charges given or refused were primarily taken, is, in so far as it relates to this ground, in the same language. The instruction of which the quoted words are a part, is as follows: The defendant by his plea sets up and relies upon the statute of adverse claim, and it is incumbent upon him to prove his occupation and adverse claim by a preponderance of evidence, the plaintiff having first established his title by sufficient record evidence, and the defendant must prove to your satisfaction every fact necessary to fulfill all the requirements of the tatute. The objection urged here is that the charges

is not confined to the law of the case, and is conse-
quently a violation of the act of March 2nd, 1877,
sec. 1088 Rev. Stats. The purpose of the judge, in
our judgment, was not to declare that the plaintiff had,
as a matter of fact, established his title by sufficient
record evidence, and thereby to express an opinion as
to the sufficiency of the evidence on this point, but
his purpose and meaning were that the onus of prov-
ing adverse possession as a defense would not arise
until the plaintiff had first established his title in the
manner stated. Spencer's Case, 2 Leigh, m. p. 751,
754-6. Of course one can not, by excepting to a part
of any instruction, exclude a consideration of the re-
mainder of the charge. It may be that one part of a
charge will correct the error apparent in another part
of it considered alone; and the same may be true as to
distinct instructions. Still, as the case will go back for
a new trial, we think it well to suggest that the expres-
sion might under some circumstances mislead, and is
not to be commended.

The instruction given to the jury, and referred to in
the ninth assignment of error, is as follows: If you
find from the evidence that the plaintiff and defendant
became the owners in fee of adjoining lots or tracts of
land, and that when they came into possession there
had not been established a true line or boundary be-
tween them, and that there had not been such an ad-
verse holding or claiming of title by defendant as was
necessary to perfect his right under the statute of ad-
verse claim up to that time, and that they then agreed
to have the true boundary line established by a survey,
and to abide by such survey, then you will be justified
in finding that his claim or holding was only intended
to be to the true line wherever it might be when legally
established by proper methods. The charge was not

erroneous. Although the defendant had been holding
and claiming up to the White line prior to plaintiff's
parchase, it was competent for him upon the plaintiff's
becoming owner of Lot 1, the statute not having run
in favor of defendant, to agree even by parol upon
on ascertainment of the true line as their boundary,
and such agreement would justify the inference.

The tenth assignment of error is based upon the
court's having instructed the jury: "But the adverse
claim must have been open, notorious and uncondi-
tional, asserted at all times and in all places wherever
necessary to make it generally known and understood."
The entire instruction of which the above is a part, is
the next following that given under the ninth assign-
ment of error, and is as follows: "If, on the other
hand, you find that the defendant entered into the
possession and occupation of the lands in controversy,
using and cultivating, or having the same enclosed by
a substantial fence, but the adverse claim must have
been open, notorious, and unconditional, asserted at
all times and in all places, wherever necessary to
make it generally known and understood, and claim-
ing the same as his own against all other rights or
claims of title by all other persons, and that he
had so held and claimed the same for a period of
seven years before the commencement of this suit, then
you should find for the defendant. The incomplete-
ness of the clause preceding the word "but," is pal-
pable. The word "notorious" is one used in defining
an adverse holding. Brown vs. Cockerell, 33 Ala., 38;
2 Smith's Leading Cases, Am. note to Taylor vs.
Horde. In Brown vs. Cockerell it is said that notoriety
and openness of possession are important constituents
of adverse possession as facts upon which the pre-
sumption of the owner's knowledge may be predicated;

the whole doctrine of adverse possession resting on the presumed acquiescence of the owner. Benje vs. Creagh, 21 Ala., 151, 156. The expression in 1 Am. & Eng. Ency. of Law, 262, where numerous authorities are cited, is that in any case the possession to effect an ouster of the owner must in its nature possess such notoriety that the owner may be presumed to have notice of it and of its extent. *Ibid*, 264; Kerr vs. Hitt, 75 Ill., 51, 60. It seems to us not unadvisable to accompany this expression, when used, with some such explanation, and thereby prevent any misapprehension by the jury as to the extent of the notoriety that is requisite. To declare that the adverse holding must be asserted at all times and in all places wherever necessary to make such claim generally known and understood is, to say nothing more, calculated to mislead a jury, at least by leaving it to them to decide at what times and places it is necessary to make such claim generally known and understood. They might infer that an indiscriminate assertion and a publicity of explanation of an adverse holding, not contemplated by the law, was necessary.

The eleventh assignment presents as erroneous the following instruction: "An agreement to settle the boundary between coterminous owners, in order to bind them, must be assented to by all of such owners, and must be made after the line is fixed. An agreement to have a survey made and to abide by it is not such an agreement as the law contemplates." Of course a non-consenting owner will not be bound by the agreement of the others, nor will any stranger to that agreement who may claim under him; however, should the consenting owner afterwards become the sole owner of the entire land, or of a distinct part of it, and continue to recognize the boundary line previ-

ously agreed on and acted upon by him and the owner of the adjoining land, we do not see why such line would not be binding to the extent of his several ownership. We think it would be.

The suggestion that an agreement to settle a boundary must be made after a line has been fixed, is incorrect. Parties may agree orally to have an uncertain or disputed line run and that it shall be the controlling line, and if they afterwards treat it as the permanent dividing line by improving up to it, or otherwise, they will be confined to that line.

The proposition that an agreement to have a survey made, and abide by it, is not such an agreement as the law contemplates, is entirely unsound. Such an agreement is a common, if not an essential, element in the settlement of disputed boundaries by coterminous owners, except where such settlements rest either upon the ascertainment of the true line, or upon adverse possession which has ripened into title under the statute of limitations.

The instruction to which the twelfth assignment refers is as follows: "In adverse claims of premises lying upon an unsettled boundary, the claim must be open, notorious and continued; *and to make it so in this case the defendant should at all times have asserted it in his conversations with the plaintiff;* he could not by offers to buy, or to settle the question of boundary by other methods lull the plaintiff into passive acquiescence, and then, when the statute had run, avail himself of it as a defense." The italicized language is the part objected to by appellant, and it appears to us, in view of the remainder of this instruction, that the meaning intended to be conveyed by the judge, and naturally inferrable by a jury, is that the

·defendant's conversations should have maintained consistently an adverse tenure; yet the defect which this construction develops, is an intimation, by the charge, that the defendant was not thus consistent, but the contrary. We think the charge was erroneous on the latter ground and should not have been given.

The trial judge charged the jury: "A mere agreement, though a mutual one, to employ a common agent, or surveyor, to run a line and set up boundaries between two adjoining proprietors where the dividing line is susceptible of being correctly located, would not estop either party from showing an error or mistake in such line. So although the jury in this case should believe that James E. Lipscomb and the defendant Watrous employed one White as a surveyor to run a line and set up the bounds between the lots of land owned by them respectively as adjoining proprietors, such an agreement would not estop the said Lipscomb, nor his grantee or grantees, from showing an error in the line which might be run and established by him, the said White." The latter of these instructions was excepted to in the motion for a new trial. It and the former one are, it will be observed, very guardedly expressed, and very limited in their scope. A mere agreement, going no further than these instructions imply, would, as is stated in them, not work, of itself, an estoppel against showing an error in a line run under it. There was no error in giving them.

The fourteenth assignment is as to the charge: "That while it is a general rule of law that a conveyance of land by a person against whom it was adversely held at the time of making such a conveyance is absolutely void and conveys no title as against the person so holding adversely, yet this rule does not apply where the possession was taken purely by mistake as to the

boundaries of the deed." The instruction is inaccu-
rate. A possession by one coterminous owner may
have been *taken* purely by mistake, but may have been
held afterwards adversely to any right of the adjoining
proprietor or any other person, intentionally, avow-
edly, openly and continuously. Where at the time of
a conveyance the holding or possession was by mistake
and without intention to claim independently of the cor-
rectness or error of the line held up to, the conveyance
will not be void, and for the reason that the holding is
not adverse. Where the holding is with the intention
to claim the land adversely, independent of the cor-
rectness or error of the boundary line, and the claim
of title and the possession are of a character to render
the possession adverse to the true title, within the
meaning of the statute of limitations (secs. 1290, 1291,
Rev. Stats.), a conveyance by the disseisee would be
void as against the disseisor as to such of the land as
was so occupied at the time of the conveyance. Bos-
ton & W. R. R. Co. vs. Sparhawk, 5 Met., 469; Spar-
hawk vs. Bagg, 16 Gray, 583; Foxcroft vs. Barnes, 29
Me., 128; Abbott vs. Abbott, 51 Me., 575. The cases
of Cleveland vs. Flagg, 4 Cush., 76, and Wade vs
Lindsay, 6 Met., 407, are easily distinguishable from
the preceding authorities. It is proper to observe
that we have no statutory provision like that of the
revised statutes of New York as to champerty, upon
which is founded the decisions of Crary vs. Goodman,
22 N. Y., 170, and Higinbotham vs. Stoddard, 72 N.
Y., 94. Our doctrine (Doe *ex dem.* Magruder vs. Roe,
13 Fla., 602; Nelson vs. Brush, 22 Fla., 374), is to be
regarded as based originally upon the common law
and statute of 32 Hen. VIII, c., 9; Pechell vs. Watson,
8 M. & W., 691; Tyler on Ejectment, 935 *et seq.*;
Thompson's British Statutes, 475 *et seq.*; and now af-

fected by the provisions of our statute of limitations as to adverse possession, *supra.*

The fifteenth, sixteenth and seventeenth assignments relate to instructions alleged to have been requested on behalf of the defendant and rejected by the Circuit Judge; but the only indication there is of their having been requested are the statements in the motion for a new trial, as embodied in the bill of exceptions, to the effect that the court erred in refusing to give such instructions. This is not legal evidence that they were duly presented to the judge on the trial, and hence they can not be considered here. Parrish vs. Pensacola & Atlantic R. R. Co., 28 Fla., 251, 9 South Rep., 696.

The judgment is reversed, and a new trial awarded.